William R. Brennan, Jr., J.
The plaintiff township seeks through the injunctive process to enforce an amortization provision in its building zone ordinance against the nonconforming use by the defendants of their land as a junk yard and automobile wrecking business. At issue by way of defense is the constitutionality of the ordinance.
Since January 20, 1930, the ordinance has prohibited the use of any land in the town for a junk yard or automobile wrecking business. It has also provided (art. 14, § Gr-3.0): “Notwithstanding any other provision of this Ordinance any automobile or other junk yard in existence at the effective date of this Ordinance in a residence district shall at the expiration of three years from such date be discontinued.”
The facts have either been stipulated or are not in dispute. In 1922, Griuseppi Romano and his wife Filomena acquired title to land designated as Section 32, Block 591, lots 15 through 29 and lots 35 through 44, on the Nassau County Land Map. In 1949, Filomena conveyed all her interest in said lots to Griuseppi who died testate on December 5,1958.
From 1926 to April, 1956, he had conducted a junk yard and automobile wrecking business on lots 15 through 29, and thereafter he and his son Joseph, a defendant herein, continued said business thereon. By his will, the decedent devised his real property to his three sons, the defendants herein, and bequeathed his interest in the junk-yard business to the defendants Frank and John Romano with the direction and request that the three defendants conduct the junk yard and automobile wrecking business jointly, as they have in fact done since his death.
The property involved (lots 15 through 29) has been zoned Residence C since January 20, 1930. No effort has previously been made to terminate the nonconforming use which began in 1926, when the land was unzoned.
There is no question that in this State nonconforming uses and structures in existence when a prohibitory zoning ordinance is enacted are allowed to continue if, and only if, enforcement of the ordinance would, by rendering valueless substantial *317 improvements or businesses built up over the years, cause serious financial harm to the property owner. (People v. Miller, 304 N. Y. 105, 109.) In the cited case the court noted that this rule placed ‘ ‘ its emphasis upon pecuniary and economic loss ” (p. 109) and said: “ The destruction of substantial businesses or structures developed or built prior to the adoption of a zoning ordinance is not deemed to be balanced or justified by the advantage to the public, in terms of more complete and effective zoning, accruing from the cessation of such uses” (p.108).
In 1958, the Court of Appeals indicated that its approach to the problem of permissible restrictions on nonconforming uses has recognized that, while the benefit accruing to the public in terms of more complete and effective zoning does not justify the immediate destruction of substantial businesses or structures developed or built prior to the ordinance, the policy of zoning embraces the concept of the ultimate elimination of nonconforming uses and thus of reasonable restriction of them (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 559, 560). However, the permissible boundaries within which the concept may operate were not established, nor did the prevailing 4 to 3 opinion promulgating the concept have the unqualified support of the entire majority.
It appeared in that case that a junk yard-cooperage use began in 1924. The property was first subjected to zoning in 1926 when it was zoned residential. In 1953 the city adopted a three-year amortization ordinance applicable to junk yards, among other uses. The petitioners, having been refused a wholesale junk license, instituted an article 78 proceeding in which the Special Term granted the relief sought and enjoined the city from prohibiting the use by application of the amortization statute. The Appellate Division, on appeal by the city, affirmed the mandate for the issuance of the license and cited People v. Miller {supra) in support of the petitioners’ right to continue its existing, nonconforming use (Matter of Harbison v. City of Buffalo, 4 A D 2d 999). It struck out the injunctive provision of the order below because injunctive relief may not be had in an article 78 proceeding. Thereupon, the city took a further appeal to the Court of Appeals which reversed the Appellate Division for the purpose of remanding the cause so that Special Term could conduct a further hearing where evidence might be adduced relating to the nature of the surrounding neighborhood, the value and condition of the improvements on the premises, the nearest area to which the petitioners might relocate, the cost of relocation, as well as any other reasonable costs which bore *318 upon the kind and amount of damages which petitioners might sustain. The court concluded: ‘ ‘ It is only upon such evidence that it may he ascertained whether the resultant injury to petitioners would he so substantial that the ordinance would be unconstitutional as applied to the particular facts of this case.” (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 564.) Two Judges concurred in the result upon the principles stated in People v. Miller (304 N. Y. 105, supra) the precise authority cited by the Appellate Division in reaching the opposite result. The minority strenuously urged affirmance of the Appellate Division upon the basis of application of what is considered to be the traditional rule of constitutional protection of property rights in pre-existing nonconforming uses and the difficulty the courts would have in picking and choosing between instances where a prior nonconforming use will or will not be protected by the courts (Matter of Harbison v. City of Buffalo, 4 N Y 2d 564, 572, 573, supra). What remains after an analysis of all the opinions is the fact that the majority followed People v. Miller (supra) with its test of pecuniary and economic loss for the validity of abolition of nonconforming uses whether immediately or by the invocation of an amortization period and reversal was required solely to complete the record with reference to factors relevant to such loss.
Viewed in that light, it is significant to note that upon the rehearing in Harbison (supra) at Special Term, the court analyzed the evidence bearing upon the economic factors mentioned in the Court of Appeals order on remand, and concluded: “It therefore appears that the resultant injury to the petitioners is of a substantial nature and that the ordinance is unconstitutional as applied to the particular facts of this case.” (Matter of Harbison v. City of Buffalo, Supreme Ct., Brie County, Fisher, J., dated Sept. 26, 1958.)
It is against this background of applicable authority that we can now proceed to review the facts in the case at bar.
The premises are improved with a one-story dwelling used as such since its erection prior to 1930 and a separate building, 18 feet by 18 feet, also erected prior to 1930 and at all times since used in connection with the junk yard and auto-wrecking business. It is not adapted to any use permitted in a Residence C District. The dwelling had a value of $4,756 in 1930 and $8,036 in 1961; the separate building had a value of $1,044 in 1930 and $1,764 in 1961. The land value increased from $5,300 in 1930 to $8,100 in 1961. It is also found that the value of the equipment now on the premises used in the defendants ’ business is $28,000 to which must be added $10,000 of inventory and stock in trade. *319 This property cannot readily be moved nor can the good will of the business estimated at $22,000 be salvaged because there is no land in the county available for the present business (junk yard and automobile wrecking) by virtue of local zoning except in the Town of Oyster Bay where such use is permitted as a special exception in an industrial district. The cost of relocation of the business to any area within a radius of 10 miles of the present location would be at least $10,000.
The recital of the facts demonstrates the substantial loss that would attach were the ordinance now enforced against the defendants. As a matter of fact, application of the ordinance would be tantamount to terminating the business of the defendants without compensation. The loss is not lessened by the failure of the plaintiff to act for more than 18 years upon its alleged rights which accrued in 1933 under the ordinance, a failure which permitted the defendants, within the proper limits of their rights of nonconforming user, to make substantial investments in the business.
As pointed out in a note in the Cornell Law Quarterly (vol. 44, pp. 450, 458) after discussing the Harbison case (4 N Y 2d 553, supra): ‘ ‘ Municipalities have a legitimate interest in preventing the perpetual continuance of prior nonconforming uses. However, constitutional protections should not be lightly cast aside nor should the desire for complete conformity demand unreasonable individual sacrifices.” The defendants herein have well-recognized legal property rights which must be protected by this court. Accordingly, the complaint is dismissed, without costs.