■ In the Matter of STEVEN I. CAMPUS et al., Respondents, v ROBERT E. DELANY et al., Constituting the Board of Appeals of the Village of Scarsdale, Appellants.—In a proceeding pursuant to CPLR article 78 to review a determination of the appellant zoning board of appeals, dated December 15, 1976, which, after a hearing denied petitioners' application for an area variance, the appeal is from a judgment of the Supreme Court, Westchester County, dated May 11, 1977, which annulled the determination and granted the petition. Judgment reversed, on the law, without costs or disbursements, determination confirmed and proceeding dismissed on the merits. The determination has a rational basis and must be confirmed (see *Matter of Cowan v Kern,* 41 NY2d 591, 599). Petitioners are the owners of a southwest corner plot which is 100 feet by 100 feet and contains four lots, each 25 feet wide by 100 feet deep, which were originally listed as Lots Nos. 1 through 4. The property is improved with a one-family dwelling and garage on the easterly half, adjacent to the street (Lots Nos. 1, 2). The petitioners propose to subdivide this property along the common line dividing Lots Nos. 2 and 3 into two separate parcels, each 50 feet by 100 feet, and to sell the unimproved westerly parcel (Lots Nos. 3 and 4) for residential construction. The ordinance pertinently requires a minimum lot area of 5,000 square feet, a minimum frontage of 50 feet and a side yard setback of 10 feet. The setback requirements for a corner lot are 30 feet to the front, 25 feet to the rear, 15 feet on the side adjoining the street and 10 feet on the side which does not adjoin a street. When the ordinance was passed, the existing dwelling became nonconforming with respect to both the front yard setback (approxi-

mately 15 feet instead of the 30 feet contemplated by the ordinance) and the side yard setback adjoining the street (approximately 10 feet instead of the required 15 feet). In 1938 petitioners' predecessor was permitted to construct a one-story addition on the westerly side of the house, thus reducing the distance from the house to the afore-mentioned common line to six feet. However, this did not violate the ordinance because the side yard setback could be calculated, the lots being in common ownership, to the furthermost westerly line, a distance of approximately 56 feet. The proposed unimproved parcel (Lots Nos. 3 and 4) would conform to the applicable requirements of the village's zoning ordinances. However, the subdivision would result in a violation as to the interior side yard setback on the westerly side of the existing residence. If the addition to the house had not been constructed in 1938, the petitioners would not require a variance. Petitioners applied for a variance with respect to this side yard setback. Contending that the intent of the ordinance is to provide a minimum distance of 20 feet between houses, they stated in their application that they would be willing to encumber the proposed westerly parcel by a recorded instrument which would provide that any dwelling erected thereon was to be at least 20 feet from the existing dwelling. At the hearing before the board, the petitioners offered proof that *with the variance,* the entire property would be worth between $74,000 and $76,000, the improved easterly parcel would have a value of from $60,000 to $63,000 and the vacant parcel a value of between $17,000 and $19,000; *without the variance,* the entire property is worth between $65,000 and $68,000. While there is considerable discrepancy in these figures, it would appear that the granting of the variance may result in an economic gain to the petitioners of at least $8,000. No proof was offered either as to the purchase price paid by the petitioners when they acquired the property or as to the cost of removing the offending one-story addition on the westerly side of the house. A large number of neighborhood residents opposed the application, either in person, by letters or by petition. The village architect and the building inspector, both of whom were present at the meeting, demonstrated in a memorandum that the application of the setback requirements to a corner lot of 50 feet by 100 feet limits the total area of a principal building, measured at grade level, to 1,125 square feet. This figure was arrived at by deducting the sum of the required front and rear setbacks (30 feet + 25 feet = 55 feet) from the depth of the parcel (100 feet − 55 feet = 45 feet), deducting the sum of the required side yard setbacks (15 feet + 10 feet = 25 feet) from the width (50 feet − 25 feet = 25 feet) and multiplying the remainders (45 feet × 25 feet = 1,125 sq. ft.). The calculated area of the existing residence being 1,498 sq. ft., it was approximately 33% in excess of the area contemplated by the ordinance. They further stated: "Another way to look at the question is to consider that the Zoning Ordinance contemplates a ratio of principal building area to total lot area of .225 (1,125 ÷ 5,000) for a corner lot in an A-5 zone. The applicants proposal would present a ratio of .300 (1,498 ÷ 5,000). In order to retain a .225 ratio with the existing structure, the lot would require an area of 6,658 sq. ft. which, with a 100' depth, would demand a width of 66.58'." They noted that there are five 50 feet by 100 feet improved corner lots within 200 feet of the subject property; the ratio of principal building area to total lot area in four of these parcels ranges from .172 to .219; in the only situation where the implied ratio of .225 is exceeded (the ratio in the fifth parcel is .249), the parcel has an adjoining, commonly owned, vacant lot. The board denied the application for the following reasons: "1. The existing house on Lots 1 and 2 is among the largest, if not the largest, structure of

its kind in the immediate neighborhood. 2. The location of the existing house on Lots 1 and 2 fails to comply with the existing zoning requirements for front and side yard setbacks on the easterly side. 3. The location of the existing house on Lots 1 and 2 fails to comply with the existing side line requirements because an addition was added on the westerly side by the applicant's predecessor in title, thus creating a self-imposed restriction on the use of Lots 3 and 4. The applicant offered no evidence as to the cost of removing this one-story addition. 4. Considering the size and location of the existing house, the granting of the application would be detrimental to the neighborhood and the public welfare generally. 5. The denial of the application will not deprive the applicant of the present use of the property, which is one for which it is reasonably adapted." Special Term annulled the determination and directed the appellants "to grant the variance on condition that petitioners, by recorded instrument, encumber the vacant lot with a restriction that no building may be erected thereon within twenty (20) feet of the structure on the adjoining lot." Mr. Justice Trainor advanced the following reasons for his decision: "It should be noted that the zoning ordinance does not have an area limitation nor does it prescribe a percentage of land to be occupied by the principal structure. Also, the existence of non-conforming zoning violations is irrelevant unless there is a showing that the subdivision would result in harm to the community. The hardship, if any, was imposed by a prior owner, not by the petitioners and, even if this were not so, would not justify a denial of the application * * * More particularly, there is no proof offered that the granting of the variance would be detrimental to health, safety or welfare of the community." Mr. Justice Trainor placed particular reliance on the decision in *Matter of Leveille v Sander* (38 AD2d 555, affd 30 NY2d 918). In *Matter of Cowan v Kern* (41 NY2d 591, 596, *supra),* the court noted: "Before the zoning authority is required to explain why the public health and welfare requires adherence to the zoning standard, the petitioner must first come forward with proof of significant economic injury." Petitioners' only proof on the question of financial hardship was to the effect that if the variance were granted, the subject property would be worth at least $8,000 more than it is worth without the variance. "However, in calculating whether financial hardship would be inflicted by adherence to the zoning standard, the inquiry should properly focus upon the value of the parcel as presently zoned, rather than upon the value that the parcel would have if the variance were granted" *(Matter of Cowan v Kern, supra,* p 597). The dissent equates inability to realize the greatest possible gain with significant economic injury, but they are not equivalent in a zoning context. The fact that the property will be worth substantially more with the variance than without it can be used to show that the petitioner may suffer economic loss, but here there is no proof of the existence or dimension of such loss (see *Matter of Craig v Zoning Bd. of Appeals of City of Yonkers,* 41 NY2d 832, 833, affg 50 AD2d 887). The petitioners have not demonstrated that the proposed vacant parcel cannot be put to reasonable use or that the denial of their application will work an impermissible confiscation. In the absence of proof as to what the petitioners paid for the property, or as to the cost of removing the one-story addition on the westerly side of the existing residence, there is no predicate which would support a finding of economic hardship in requiring the petitioners to adhere to the zoning ordinance (see *Matter of Cowan v Kern, supra,* p 597). The existence of a self-created hardship, while it does not prevent the board from granting the variance, does not entitle the landowner to demand a variance. The dissent emphasizes that there is no

ordinance which expressly restricts maximum lot coverage to a specified percentage of the lot and contends that such a requirement should not be inferred on the basis of setback requirements. However, as to any individual parcel of property, the maximum permissible lot coverage is determined by the ordinance setback provisions. It is not possible for a landowner to both conform to setback requirements and to construct buildings covering the entire area of his property. The *Leveille* case *(supra)*, on which Special Term relied, is readily distinguishable, as in that case no one appeared in opposition, there was nothing to indicate that the existing dwelling was nonconforming in any respect, and the petitioners offered proof of what it would cost to move the house so as to comply with the side yard requirement. The standard by which a request for an area variance is to be measured is whether strict compliance with the zoning ordinance will result in practical difficulties. The responsibility for making zoning decisions rests with the local officials and the area of judicial review is limited. The determination of the responsible officials will be sustained if it has a rational basis and is supported by substantial evidence. The fact that similar corner parcels in the immediate vicinity conform to the implied limitations on lot coverage argues strongly that the grant of the application would adversely affect the character of the neighborhood (see *Matter of Craig v Zoning Bd. of Appeals of City of Yonkers, supra)*. As there is nothing in the record to indicate that the board acted in a manner that was in any way arbitrary, unreasonable, irrational or indicative of bad faith, its decision should not have been disturbed. Whether a court would have, or should have, decided differently is of no moment *(Matter of Cowan v Kern, supra,* pp 598-599). Latham, J. P., Rabin and Gulotta, JJ., concur; Margett, J., dissents and votes to affirm the judgment, with the following memorandum: Petitioners are the owners of a 100- by 100-foot lot situated at the southwest corner of an intersection in Scarsdale. The property consists of four lots, numbered 1 through 4 as shown on a map filed by the county clerk in 1900. A two-story house and a garage are situated on Lots Nos. 1 and 2; Lots Nos. 3 and 4 are vacant. The applicable zoning ordinance requires a minimum lot area of 5,000 square feet and a minimum frontage of 50 feet. The setback requirements for a corner lot are 30 feet in the front, 25 feet in the rear, 15 feet on the side adjoining a street and 10 feet on the interior side. The existing house and garage were already built when the zoning ordinance was passed. The front yard setback of 15 feet, 8½ inches (instead of 30 feet as contemplated by the ordinance), and the 10 foot, 4 inch setback on the side adjoining the street (instead of 15 feet) became legally nonconforming. On the interior (west) side, the setback requirement was met as the house was approximately 10 feet from the common "line" dividing Lots Nos. 2 and 3. However, in 1938 a prior owner of the house constructed a one-story addition on the interior (west) side of the house which reduced the distance from the house to the aforesaid common line to approximately six feet. A permit was issued for the addition and the zoning ordinance was not violated thereby inasmuch as Lots Nos. 1 through 4 were all owned by the same individual and, therefore, the interior side yard setback could be calculated to the furthermost westerly line, a distance of approximately 56 feet. Petitioners seek to divide the property into two parcels, each 50 by 100 feet, in order to create a building lot out of Lots Nos. 3 and 4. The proposed line of division is the common line separating Lots Nos. 2 and 3. The proposed vacant parcel meets the applicable requirements in that it would consist of 5,000 square feet and would have a minimum frontage of 50 feet. However, because of the 1938 addition on the west side of the house, the proposed subdivision

would result in a zoning violation insofar as the improved parcel (Lots Nos. 1 and 2) is concerned since the interior side yard setback would be roughly 4 feet short of the required 10 feet. Petitioners applied for a variance, with respect to the interior side yard setback requirement, for Lots Nos. 1 and 2. In their application, petitioners expressed the "realiz[ation]" that "the intent of the zoning ordinance is to provide a minimum distance of 20 feet between houses * * * in order to provide reasonable access, light, and air to houses located on adjoining building lots." They agreed, "if the Board of Appeals deemed it necessary," to encumber Lots Nos. 3 and 4 with a restriction that no building might be erected thereon within 20 feet of the house situated on Lots Nos. 1 and 2. Hearings on petitioners' application were held on November 17, 1976 and December 15, 1976. Petitioners presented evidence that if the variance were granted, the vacant lot would have a value of $17,000 to $19,000; the house would be worth between $60,000 and $63,000 on a 50- by 100-foot lot. If the lot is *not* divisible, the house on the 100- by 100-foot lot is worth between $65,000 and $68,000; if the lot is divisible, the house on the 100- by 100-foot lot is worth $74,000 to $76,000. While there is some discrepancy in these figures, it would appear that without the variance the property is worth $65,000 to $68,000; with the variance the property would be worth anywhere from $74,000 to $82,000. Thus the proof established economic loss of a minimum of $6,000 and a maximum of $17,000. The proof in opposition to the application consisted primarily of two memoranda from the village architect and building inspector. The first of those indicates that strict adherence to the applicable setback requirements would limit the floor area of a house on a 5,000 square foot lot to a maximum of 1,125 square feet (or 22.5% of the lot). Petitioners' house covers 1,498 square feet and would take up 30% of its lot if the variance were granted (this primarily because of the legally nonconforming setbacks in the front and on the side adjoining the street). It was noted that five 50- by 100-foot improved corner lots lie within 200 feet of the subject property and that of those five, only one house took up more than 22.5% of its lot. The memorandum opines that a granting of the requested variance would violate one intent of the zoning ordinance "with regard to the maximum size of a principal building" on a 5,000 square foot lot. The second memorandum notes that had it not been for the 1938 addition to the west side of the house, no violation would occur by reason of the proposed subdivision. It concluded that petitioners' current problem stemmed from "a self-imposed restriction, albeit by a different owner." By resolution dated December 15, 1976, the board of appeals denied petitioners' application. The reasons given were that: (1) the existing house on Lots Nos. 1 and 2 "is among the largest, if not the largest, structure of its kind in the immediate neighborhood", and that the granting of the application would be detrimental to the neighborhood in view of the size of that house; (2) petitioners' predecessor in title had created a self-imposed restriction on the use of Lots Nos. 3 and 4 and that petitioners had "offered no evidence as to the cost of removing this one-story addition"; (3) the existing house already fails to comply with the "requirements for front and side yard setbacks on the easterly side"; and (4) the "denial of the application will not deprive [petitioners] of the present use of the property, which is one for which it is reasonably adapted." Petitioners commenced an article 78 proceeding against the board and, in an opinion dated April 19, 1977, Special Term ruled in favor of petitioners. It was found that petitioners had proven significant economic injury if the variance were denied. It was noted that the zoning ordinance does not prescribe a percentage of land to be occupied

by the principal structure, and that the "existence of non-conforming zoning violations is irrelevant unless there is a showing that the subdivision would result in harm to the community." No such detrimental effect could be found in the record, nor would the "self-imposed hardship" justify the board's denial. Accordingly, the board was directed to grant the variance "on condition that the petitioners, by recorded instrument, encumber the vacant lot with a restriction that no building may be erected thereon within 20 feet of the structure on the adjoining lot." The board appeals from the resulting judgment. The judgment appealed from should be affirmed. It is well settled that the standard by which a request for an area variance is to be measured is whether strict compliance with the zoning ordinance will result in practical difficulties (*Matter of Cowan v Kern,* 41 NY2d 591, 598; *Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers,* 17 NY2d 249, 255; *Matter of Village of Bronxville v Francis,* 1 AD2d 236, 238, affd 1 NY2d 839). Although the phrase "practical difficulties" has apparently never been precisely defined (see *Matter of Wachsberger v Michalis,* 19 Misc 2d 909; 3 Anderson, American Law of Zoning, § 14.46, p 7; 2 Rathkopf, Law of Zoning and Planning [3d ed], p 45-26), it appears from the case law that the standard contemplates a balancing test of sorts whereby the hardship to the applicant[1], by strict adherence to the zoning ordinance, is weighed against the detriment to neighboring property owners and the public generally should the variance be granted. Thus, in a generally accepted set of guidelines (see, e.g., *Matter of Karras v Michaelis,* 26 AD2d 640, 641, revd on other grounds 19 NY2d 449; *Matter of Cohalan v Schermerhorn,* 77 Misc 2d 23, 28), Justice Meyer stated five criteria to be considered by zoning boards when considering applications for area variances: "(1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities (fire, water, garbage and the like), (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance" (*Matter of Wachsberger v Michalis,* 19 Misc 2d 909, 912, *supra).*[2] In the language employed by the applicable statute, "the question to be determined by the

---

1. See 2 Rathkopf, Law of Zoning and Planning (3d ed), p 45-26: "it is difficult to conceive of a situation involving practical difficulty which does not also involve hardship in some degree".

2. See, also, 2 Rathkopf, Law of Zoning and Planning (3d ed), pp 45-28 to 45-29, which states the relevant criteria as follows: "The questions properly before the board of appeals on an application for a variance from 'area restrictions,' * * * are: 1. Whether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome. 2. Whether a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners. 3. Whether relief can be granted in such fashion that the spirit of the ordinance will be observed and public safety and welfare secured. In considering these basic questions the board should take into consideration the nature

board is whether 'carrying out the strict letter' of the setback requirement with respect to the subject parcel can consistently with the 'spirit of the ordinance,' and the security of 'public safety and welfare' * * * be varied in order that 'substantial justice [be] done' " *(Matter of Fina Homes v Beckel,* 24 Misc 2d 823, 826; see, also, Village Law, § 7-712, subd 2, par [c]). Based upon the foregoing criteria, I would conclude that the board's denial of petitioners' application was an abuse of discretion (see *Matter of Cowan v Kern,* 41 NY2d 591, *supra; Matter of Fulling v Palumbo,* 21 NY2d 30, 32). The variance sought amounts to a mere four feet, the effect of which could have been cushioned, and indeed offset, by acceptance of petitioners' proposal to encumber the vacant parcel with a restriction that no building might be constructed thereon within 20 feet of petitioners' existing building. The increase in population density would amount to the occupants of one house. The character of the neighborhood would hardly be expected to be altered merely because the existing structure on Lots Nos. 1 and 2 would occupy 30% of the parcel on which it is located rather than the 22.5% coverage which would obtain through strict compliance with the setback requirements. In any case, no maximum percentage of lot coverage is prescribed in the zoning ordinance and such a requirement should not be inferred on the basis of setback requirements. No substantial detriment to adjoining properties would be created. In fact, the variance sought would have no effect on any adjoining property (save the vacant lot) with respect to legal setback distances from their property lines since any building constructed on the "newly created" parcel would have to comply with the village's setback requirements. The purchaser of Lots Nos. 3 and 4 *would* be affected by the variance and by the encumbrance mandated by Special Term. But a potential builder on Lots Nos. 3 and 4 would have to shave no more than four feet off the maximum permissible building area. Actually, the only real "detriment" to petitioners' adjoining neighbors is the loss of an open lot. Petitioners cannot, however, be expected to maintain "open spaces" for their neighbors. Absent a granting of the relief sought, petitioners' only alternative means of complying with the interior side yard setback requirement, and hence of being able to build upon their "vacant parcel," would be to remove a 40-year-old section of the existing building. Although no evidence as to the cost of such removal was adduced, that "solution" would seem draconian at best. Finally, although petitioners' difficulty is legally "self-imposed" (see 2 Rathkopf, Law of Zoning and Planning [3d ed], p 48-6), that factor alone cannot sustain the board's determination herein "since most applications for a variance to build on substandard property or to build in a nonconforming manner can be viewed as cases of self-imposed hardship" *(Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449, 455). It is well settled that a self-created hardship does not deprive a zoning board of its power to grant an area variance, but is only one factor to be taken into account (see, e.g., *Matter of Courtesy Estates v Schermerhorn,* 51 AD2d 966). On balance then, the interests of justice would have been served by granting petitioners' application, particularly in the light of their offer to emcumber

---

of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; whether, if the restriction is not removed, the restriction would have a tendency to create hardship (to any extent) to the owner in relation to his efforts to make normal improvements in the character of that use of the property which is a permitted use under the use provisions of the ordinance."

the "vacant parcel" so as to comply with the spirit of the setback requirements (see *Matter of Leveille v Sander,* 38 AD2d 555, affd 30 NY2d 918). Indeed, the *Leveille* case, in which it was held to be an abuse of discretion for this same board to deny an application for a variance, presented substantially identical facts. The board attempts to distinguish *Leveille* on two grounds, both of which deserve comment. First, it is argued that in *Leveille* there was proof by petitioners as to the cost of moving their house so as to comply with the 10-foot setback requirement. Second, it is contended that there is no indication that the house in *Leveille* was nonconforming in any respect and that to grant a variance in the instant case "would pile nonconformity upon nonconformity." As noted, the option of removing a 40-year-old section of the existing building would seem to present a drastic alternative. Such an undertaking would make all of four feet of difference on one side of petitioners' house while not appreciably altering that factor with which the board is allegedly most concerned—percentage of lot coverage. Therefore the fact that petitioners did not go through the artificial and meaningless charade of presenting evidence as to the cost of removing the 1938 addition is of no operative significance. The existing nonconforming setbacks are relevant only insofar as percentage of lot coverage is concerned. Were there an ordinance restricting maximum lot coverage to a specified percentage of the lot, the board's point might have some validity. But absent any such expression of legislative will, it is plain that the sought-after setback variance has no relation to any of the other three setbacks, be they conforming or nonconforming.