■ In the Matter of PALMA MITCHELL et al., Appellants, v ZONING BOARD OF APPEALS OF THE CITY OF YONKERS et al., Respondents, and CHRISTIAN BURCKEL, Intervenor-Respondent. (And a Similar Proceeding.) — In two proceedings pursuant to CPLR article 78, the first of which was to review a determination of the respondent Zoning Board of Appeals of the City of Yonkers, which granted an area variance to the intervenor-respondent, and the second of which granted a one-year extension of the variance, the petitioners appeal from two judgments of the Supreme Court, Westchester County, dated November 14, 1978, and January 17, 1980, respectively, which dismissed the petitions. Judgments affirmed, without costs or disbursements. No opinion. Mangano, Margett and Weinstein, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgments and remand the matter to the zoning board of appeals for a new hearing, with the following memorandum, in which Cohalan, J., concurs. The primary issue in these article 78 proceedings brought by neighboring property owners is the right of the intervenor-respondent Christian Burckel to an area variance which would permit the division of his property into three lots instead of two. I find that the record does not support the variance granted. Burckel owns a parcel of property in the City of Yonkers consisting of over 80,000 square feet with road frontages on two essentially parallel streets. The portion of the property fronting on Rockledge Road is improved with a main house and a carriage house; the Devon Road frontage is at a substantially lower grade and consists of approximately 40,000 square feet of vacant land. When Burckel purchased the property in 1951 it was in the S-100 single-family residence district which required a minimum lot area of 10,000 square feet. In 1968 the neighborhood was rezoned to S-200, requiring a minimum lot area of 20,000 square feet with street frontage of not less than 200 feet. In 1978 Burckel applied to the Yonkers Zoning Board of Appeals (the board) for a street frontage variance to permit subdivision of his property into three lots. Under his proposal the vacant land fronting Devon Road would be divided into two lots which would conform to the 20,000 square foot area requirement but fall substantially short of the street frontage requirement since each of the two vacant lots would have a frontage of 120 feet. The third lot, containing the buildings, would be entirely conforming. At the board's hearing on the variance Burckel's attorney declared that "the spirit of" S-200 would prevail if the variance was granted and then made the following statement in support of it: "If you appear at the scene you will find that Devon Road and Rockledge Road are two different levels. 45 feet higher than Devon Road is Rockledge Road. So that anybody in Rockledge

Road would overlook the roof of any house built on Devon Road. Devon Road is improved by houses all of which are substandard in lot width, all of which are more than 20,000 square feet. This half-acreage zoning is still going to be held. Once upon a time the taxes on vacant land was rather insignificant. But as time went on taxes went up. They went to $3,000, now it's almost $10,000 that he pays for the land alone. He wants to divide this property. The property lends itself toward a division. If you divide this into two lots facing Devon Road you will clear up a brush area, erect two houses by a responsible builder, he is going to build houses which will sell in the neighborhood of $125,000. They are not going to be lean-to's or matchboxes, they are going to be a credit to the neighborhood. So, it will be an improvement to the neighborhood rather than anything deteriorating. In that respect I am asking for a variance with respect to lot width only so as to do one thing only which they want in that area, one-family houses to carry on the purpose of 'S-200' zoning, namely not to crowd it. That's my whole case, gentlemen of the Zoning Board. If there are any questions, I would be glad to answer them." As is often the case, the opposition at the hearing was more vociferous than educational, consisting of little more than conclusory statements by neighbors. At a subsequent meeting the board granted the variance without making any findings, although the board member who moved that the variance be granted voiced his own opinion that the resulting lots would be in keeping with the area, that no traffic or density problems would be created, and that Burckel would be relieved of economic hardship. An article 78 proceeding by neighboring property owners seeking to nullify the grant was dismissed by Special Term, essentially on the ground that "the continued use of this land as a large parcel would operate to the detriment of the respondent intervenor by way of increased tax assessments". The petitioners appealed, and during the two-year pendency of the appeal, the board granted Burckel two successive one-year extensions of his variance. Before us now are appeals from the dismissals of the original article 78 proceeding and a subsequent one which challenged the first one-year extension of the variance. The instant matter is clearly of the *Matter of Fulling v Palumbo* (21 NY2d 30) genre under which an area variance may be granted if the movant can demonstrate significant economic injury and the variance will not adversely affect the neighborhood *(Matter of Fulling v Palumbo, supra; Rowe St. Assoc. v Town of Oyster Bay*, 63 Misc 2d 46, affd 34 AD2d 987, affd 27 NY2d 973). As to the second standard, it is plain from the record that the division of Burckel's property into three lots will cause no untoward result to neighboring properties or their values since a substantial number of the lots in the area already are substandard either in area or street frontage. There are two difficulties with the board's determination, however. For one, it made no findings and thereby violated the elemental precept that an administrative agency must make findings susceptible to intelligent judicial review (see *Matter of Community Synagogue v Bates*, 1 NY2d 445; *Matter of New York Water Serv. Corp. v Water Power & Control Comm. of State of N.Y.*, 283 NY 23, 30; *Matter of Shermack v Board of Regents of Univ. of State of N.Y.*, 64 AD2d 798; see, also, State Administrative Procedure Act, § 307). The comments made by the moving board member are not only conclusory — they represent only one man's opinion. The primary reason for reversal, however, is the lack of evidence to support a finding either of practical difficulty in the traditional sense or significant economic injury. An area variance may not be granted without proof that adherence to existing standards will result in "significant economic injury" or "practical difficulties" (see *Matter of Fuhst v Foley*, 45

NY2d 441, 445; *Matter of National Merritt v Weist,* 41 NY2d 438, 442, 445; *Matter of Cowan v Kern,* 41 NY2d 591, 596; *Matter of Fulling v Palumbo, supra;* see, also, *Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309; cf. *Matter of Weinstein v Planning Bd. of Vil. of Great Neck,* 21 NY2d 1001). Apart from Judge Meyer's long-surviving guidelines for determination of whether an area variance should be granted (see *Matter of Wachsberger v Michalis,* 19 Misc 2d 909), no precise definition of the term "practical difficulties" has yet been formulated. As the Court of Appeals has noted, a petitioner must show that as a practical matter he cannot utilize the property without coming into conflict with certain of the restrictions of the zoning ordinance, but "an applicant does not qualify for an area variance by showing that he is merely inconvenienced by the zoning restrictions" *(Matter of Fuhst v Foley, supra,* p 447). Here, of course, Burckel suffers from no "practical difficulty" in the traditional sense for his property is easily divisible into two conforming lots. If the variance has any basis, it must be that of significant economic injury, but the record is insufficient in that respect as well. The only evidence advanced to establish Burckel's significant economic injury was that it was burdensome for an elderly man to pay taxes of about $10,000 on the vacant land. *Conley v Town of Brookhaven Zoning Bd. of Appeals (supra,* pp 313, 314), on which Burckel relies, involved an area variance granted to a homeowner who wished to divide his plot into two nonconforming parcels because "requiring the owner to pay taxes on an area twice the size of the minimum zoning would work a financial hardship". But the *Conley* land could not have been divided into two conforming lots, while it is quite apparent that Burckel can divide his land into two conforming lots and eliminate his tax problem by selling the vacant parcel. There is absolutely nothing in the record to show that the vacant land cannot be sold as a single lot (cf. *Matter of Forest v Evershed,* 7 NY2d 256). The other potential argument for a finding of financial hardship is that the zoning restrictions preclude a reasonable return on investment *(Matter of Douglaston Civic Assn. v Galvin,* 36 NY2d 1). But to make such a case, Burckel was obligated, *inter alia,* to establish what he paid for the property and what it is worth as presently zoned *(Matter of Cowan v Kern,* 41 NY2d 591, *supra; Matter of National Merritt v Weist,* 41 NY2d 438, *supra).* Not only is there an utter failure of proof in these regards, but it has not even been shown what the vacant land could bring if sold as a single lot as compared to its sale value if transformed into two smaller lots. Patently, the claim of economic injury lacks foundation as far as the record is concerned. While I thus vote to reverse the judgments under review and to annul the determinations granting the variance and its time extension, petitioners' unexplained two-year delay in prosecuting the original appeal moves me to vote as well to remand the matter to the board to permit Burckel to present additional evidence in support of his application for a variance, if he be so advised.