OPINION OF THE COURT
Eli Wager, J.
In the years since a less stringent standard of proof required of an applicant for an area variance than that theretofore required was judicially enunciated in Matter of Village of Bronxville v Francis (1 AD2d 236, affd 1 NY2d 839) denials of applications for area variances by zoning boards have been frequently challenged in the courts, but there have been few challenges to board decisions granting such variances (see 3 Anderson, American Law of Zoning [2d ed], § 18.47). This article 78 proceeding is one such case.
*264 THE FACTS
The petitioning civic association and individual landowners seek to annul variances granted by the respondent Zoning Board of Appeals of the Town of Hempstead (the Board) to respondents O’Donnell which permit construction of a 20-foot by 44-foot one-family dwelling on a 35- by 60-foot lot (designated Lot 53) in Point Lookout, an unincorporated area in the Town of Hempstead. The variances in the aggregate are of some magnitude: they permit construction of a building which will occupy 41.9% of the area of the lot whereas the zoning ordinance provides that a building shall not exceed 30%; they permit substantial deviations in rear-yard and front-width and setback requirements; and, Lot 53 comprises only 2,100 square feet whereas the zoning ordinance prohibits construction of buildings on lots of less than 6,000 square feet.
The building zone ordinance of the Town of Hempstead provides two saving clauses for lots held in single and separate ownership: section 6.1 of article 5 provides that rear yards in lots of less than 100 feet in depth which were held in single and separate ownership at the time the ordinance became effective (Jan. 20, 1930) may be below the required minimum (but not less than 15 feet) and section B-10.1 provides that lot area and frontage requirements do not apply to lots held under different ownership from adjoining lots on and after October 25, 1957 provided that the lot has an area of at least 4,000 square feet.
It appears that Lot 53 was held in common ownership in 1930 together with Lot 11 (a “back-to-back” lot fronting on a parallel street) and Lot 54 (adjoining on the north) and thus, as respondents concede, the O’Donnells do not have a vested right to build in a manner not conforming to rear-yard minimum requirements (see Matter of Craig v Zoning Bd. of Appeals of City of Yonkers, 50 AD2d 887, affd 41 NY2d 832). Lot 53 was also held in common ownership with Lot 11 (the “back-to-back” lot) on October 25, 1957 and for some time thereafter until it was acquired by the county upon nonpayment of taxes and sold to a predecessor in title of the O’Donnells. Although the effect of a back-to-back split is disputed by the parties (the Board reasoning that minimum lot area requirements are not applicable *265 since the lots must be deemed to have been in single and separate ownership and the plaintiffs urging a merger doctrine), it appears that the issue is not determinative since Lot 53 has an area of less than the 4,000 square feet required by section B-10.1 and thus a variance from area and frontage requirements is required in any event.
The Board in its decision granting the variances determined that the O’Donnells had demonstrated “significant economic injury” should the application be denied and that “the variance will not adversely affect the neighborhood.” On the issue of economic injury, the Board found that the O’Donnells would be injured to the extent of $15,000 should the variance be denied based upon expert testimony that the value of the lot as “yard space” is $2,500 whereas its value as a building lot is $17,500. There was no mention made (and no testimony on the issues offered at the hearing) of the cost to the O’Donnells of the property’s acquisition or efforts made by them to sell the lot to neighbors (other than the price they could expect on such a sale). On the issue of the effect on the neighborhood, the Board found, inter alia, that of 31 residential plots within a radius of 200 feet, 13 are lots measuring 35 by 60 feet, 2 are lots measuring 35 by 120 feet, 15 are lots measuring 70 by 60 feet, only 1 is conforming and that the area has not developed “as street to street building plots”. The Board concluded that to “try to impose the current 6,000 square foot requirement on this particular area would have no relation to reality whatsoever.”
THE LAW
A zoning board determination concerning an application for a variance may be set aside only where the record reveals illegality, arbitrariness or abuse of discretion and will be sustained if it has a rational basis and is supported by substantial evidence in the record (Matter of Fuhst v Foley, 45 NY2d 441). Initially, the standard by which a request for an area variance is to be measured is whether strict compliance with the zoning ordinance will result in “practical difficulties” (Matter of Fuhst v Foley, supra; Matter of Cowan v Kern, 41 NY2d 591; Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309). Since 1967 when Matter of Fulling v Palumbo (21 NY2d 30) was *266 decided (or since that case’s rejuvenation; see 3 Rathkopf, The Law of Zoning and Planning [4th ed], § 38.05, subd [4]), the courts have required (at least where reviewing a zoning board’s denial of an area variance) that the applicant have produced in the record proof of “significant economic injury” (see, e.g., Matter of National Merritt v Weist, 41 NY2d 438; Matter of Cowan v Kern, supra; Franchise Realty Interstate Corp. v Pisaturo, 75 AD2d 1003). If indeed such proof is required in the instant case, the proof in the record is insufficient. The inquiry should have focused on the value of Lot 53 as presently zoned rather than upon the value it would have if the variances were granted and in the absence of proof of what the O’Donnells paid for the property there is no predicate to support a finding of economic hardship (see Matter of Cowan v Kern, supra; Matter of Brower v Board of Zoning Appeals of Inc. Vil. of Val. Stream, 58 AD2d 863; Matter of Campus v Delaney, 62 AD2d 990). Denials of area variances have been sustained by the courts where such proof was not submitted in cases involving single lots of insufficient acreage (e.g., Matter of Brower v Board of Zoning Appeals of Inc. Vil. of Val. Stream, supra; Matter of Schrade v Waring, 79 AD2d 739; Matter of Craig v Zoning Bd. of Appeals of City of Yonkers, 50 AD2d 887, affd 41 NY2d 832, supra) as well as in cases where the property owner proposed to split large lots into nonconforming parcels (see, e.g., Matter of Cowan v Kern, supra; Matter of Campus v Delaney, supra; Rowe St. Assoc, v Town of Oyster Bay, 63 Misc 2d 46, affd 34 AD2d 987). However, in Matter of Krueger v Zoning Bd. of Appeals of Town ofNiskayuna (48 AD2d 734) a zoning board denial of a variance for a single, substandard lot was reversed, upon the ground that the determination effectively denied the owners of any use of the land, even though the owners had sold off an adjoining lot thus creating the hardship. The opinion omits any discussion whatsoever of financial hardship. The Krueger case echoes the traditional approach to variances for undersized lots, i.e., that “a property owner may not be denied any use of his property”, that to deny a variance under such circumstances would constitute a “taking”, and that the inability to use such, lots constitutes the requisite “practical difficulties”. Thus, grants of area variances per *267 mitting construction on such lots were routinely affirmed by pre-Fulling v Palumbo courts in opinions devoid of any mention of “significant economic injury” (see, e.g., Matter of Feldman v Nassau Shores Estates, 12 Misc 2d 607, affd 7 AD2d 757; Matter of Fina Homes v Thompson, 226 NYS2d 613; Matter of Long Is. Land Research Bur. v Young, 7 Misc 2d 469) and zoning board denials of such variances were routinely reversed (see, e.g., Matter of Gruen v Simpson, 153 NYS2d 287, affd 3 AD2d 841) or remanded (Matter of Stadden v Macauley, 12 Misc 2d 297, affd 4 AD2d 704), perhaps on the rationale that the economic hardship arising from a complete inability to use such parcels as well as the difficulty in doing so is readily apparent (see 3 Rathkopf, The Law of Zoning and Planning [4th ed], § 38.05).
Post -Fulling v Palumbo cases where a board’s grant of an area variance by a zoning board was the issue appear not to have required a showing of economic injury. In Conley v Town of Brookhaven (40 NY2d 309, 315, supra) the court ruled that financial hardship “is one factor that may be considered, but, by itself, is not determinative.” The court in Conley distinguished financial hardship from “practical difficulties”, holding that the landowner there had shown both when he pleaded the necessity for paying taxes on a lot which contained twice the required acreage and which if subdivided would lack only sufficient frontage in an area where there were other similarly nonconforming lots. Thus, the board’s determination was sustained. In Matter of Mitchell v Zoning Bd. of Appeals of City of Yonkers (80 AD2d 641) the zoning board’s grant of an area variance was sustained by the majority (according to the dissent) in the absence of any showing of economic injury other than the need to pay taxes and in the absence of any showing or practical difficulties in the traditional sense since the lot at issue could have been divided into two conforming parcels whereas the variance permitted a division into three, two of which lacked sufficient frontage (cf. Matter of Cohalan v Schermerhorn, 77 Misc 2d 23). As in Conley, however, there were similarly nonconforming lots in the area.
Thus, it appears that as a general rule “significant economic injury” must be shown by the petitioning land *268 owner before the courts will annul a zoning board’s denial of an area variance but when a zoning board’s grant of such a variance is at issue the courts do not impose a similar burden on the respondents. In fact, the decisions in both Conley (supra) and Mitchell (supra) suggest that both economic injury (i.e., the necessity for paying taxes) and practical difficulties (the inability to use substandard lots) may be presumed, a presumption which echoes traditional analysis. The significant factor underlying both Conley and Mitchell appears to be the support in the record for the Board’s finding that there were other nonconforming lots in use in the area.
The differing judicial responses in the denial and grant cases can perhaps be explained by judicial reluctance to substitute a court’s judgment for that of a zoning board (Matter of Fuhst v Foley, 45 NY2d 441, supra; see Matter of Willits v Schoepflin, 23 AD2d 868 [dissenting opnj). However, whatever the explanation, application of the evolving rules compels the conclusion that the instant Board’s determination should be sustained. The practical difficulty here is even more apparent than in either Conley (supra) or Mitchell (supra) and there is substantial evidence in the record of similarly nonconforming lots in the area.
The effect of the back-to-back split accomplished by a predecessor in title of the O’Donnells has been much debated by the parties, the petitioners arguing that the Board made an erroneous conclusion of law which “prejudiced” their right to a fair hearing. Indeed, a finding of single and separate ownership could result in the additional finding that the O’Donnells’ inability to use the property did not result from any act of theirs (Matter of Scavone v Volz, 34 AD2d 966) thus precluding consideration of self-imposed hardship as a factor. However, the Board conceded the effect of the lateral split, thus conceding that the self-imposed hardship factor was present in the case, a factor which, in any event, does not deprive the Board of its discretionary power to grant an area variance (Matter of Craig v Zoning Bd. of Appeals of City of Yonkers, 50 AD2d 887, affd 41 NY2d 832, supra). Accordingly, even though the Board apparently overlooked the fact that Lot 53 does not come within the exception in section B-10.1 *269 because it lacks the minimum area required, it appears that the determination may still be sustained as having a rational basis. As an aside, insofar as the question of merger is concerned, it is noted that section B-10.1 speaks of “adjoining” land and is distinguishable from provisions like that in the ordinance at issue in Hemlock Dev. Corp. v McGuire (35 AD2d 567) which contained an unqualified prohibition (not limited to “adjoining” lots) on sales, divisions or setoffs which create nonconforming parcels (see record on appeal 35 AD2d 567; see, also, Matter of Chasanoff v Silberstein, 6 AD2d 872, affd 6 NY2d 807). Thus, in Hemlock, the court held that the fact that lots are contiguous in the rear neither precludes nor effects a merger and that merger is an issue of fact. On the other hand, cases construing the Hempstead ordinance have held that such lots are necessarily to be deemed to have retained their single and separate identity (see, e.g., Matter of Guazzo v Chave, 59 Misc 2d 1050). Even if the Guazzo case is not the law, there is little evidence of merger here: it is not asserted that the back-to-back lots were ever used in conjunction with each other or that each contributed to the value or utility of the other (Hemlock Dev. Corp. v McGuire, supra) and it appears that each appears as a separate lot on the subdivision map (Matter of Krueger v Zoning Bd. of Appeals of Town of Niskayuna, 48 AD2d 734, supra).
The petition is dismissed.