OPINION OF THE COURT
John S. Lockman, J.
This proceeding to annul and set aside a determination of the respondent Hempstead Town Board of Zoning Appeals dated June 21, 1983 is denied and the petition is dismissed.
Petitioners are property owners, residents and taxpayers of the Town of Hempstead, County of Nassau. Respondents constitute the Town Board of Zoning Appeals. Intervenorsrespondents own and operate businesses engaged in the dismantling and resale of parts of old automobiles.
The Town of Hempstead adopted a zoning ordinance on December 17, 1929, effective January 20, 1930. Respon *587 dent Town represents, and no one disagrees, that the ordinance contained no prohibition of “junk yards” until the enactment of article 7-A establishing a “Light Manufacturing District” on April 3,1951. Simultaneously article 8 “Industrial Districts” was amended. Section LM 1.0 of article 7-A includes among the uses prohibited in such light manufacturing district, “Dismantling motor vehicles, storage and sales of used parts”. Included among the prohibited uses in article 8 “Industrial Districts” and accordingly prohibited throughout those areas of the Town under such ordinance are “Junk yards”.
In 1965 the New York State Legislature enacted section 136 of the General Municipal Law entitled, “Regulation of automobile junk yards”. Subdivision 1 of that statute states the legislative intent to be: “A clean, wholesome, attractive environment is declared to be of importance to the health and safety of the inhabitants and the safeguarding of their material rights against unwarrantable invasion and, in addition, such an environment is deemed essential to the maintenance and continued development of the economy of the state and the general welfare of its citizens. It is further declared that the unrestrained accumulation of junk motor vehicles is a hazard to such health, safety and welfare of citizens of the state necessitating the regulation, restraint and elimination thereof. At the same time, it is recognized that the maintenance of junk yards as hereinafter defined, is a useful and necessary business and ought to be encouraged when not in conflict with the express purposes of this section.” The statute defined “junk yard” to mean “any place of storage or deposit, whether in connection with another business or not, where two or more unregistered, old, or secondhand motor vehicles, no longer intended * * * for legal use * * * are held”. It established licensing procedures including the necessity of a public hearing at which aesthetic considerations would be relevant and required fencing. Subdivision 12 of the statute provides, however: “Effect of local ordinances or local laws. This section shall not be construed to affect or supersede zoning ordinances or local laws or any other ordinances or local laws for the control of junk yards now in effect or hereafter enacted in any municipality within the *588 proper exercise of the police power of such a municipality and shall not be deemed to apply to any municipality which has any such ordinance or local law or regulation to license or regulate junk yards.” The statute was made applicable to existing enterprises with some modifications.
Petitioners contend that the Town of Hempstead does not have an ordinance regulating automobile junkyards so that section 136 of the General Municipal Law is controlling. The vehicle by which this issue comes before the court is a CPLR article 78 proceeding to set aside the determination made by the Hempstead Town Board of Zoning Appeals on June 21, 1983 finding that an automobile dismantling business was not the same as a prohibited “junk yard”, but was rather a permitted use in an industrial zone pursuant to the provisions of article 7-A and article 8 of the ordinance which prohibit automobile dismantlers in a light manufacturing zone but not in an industrial zone. The Board further determined that the combined effect of the two articles was to regulate automobile dismantlers or junkyards and preclude application of section 136 of the General Municipal Law.
Of the parties opposing the petition only intervenorrespondent Stephen Lanning doing business as Hampton Salvage challenges petitioners’ standing as aggrieved parties under section 282 of the Town Law. Since it is uncontested on this record that petitioners are property owners and taxpayers at least some of whom live in relative proximity to the premises occupied by automobile dismantlers the court finds that their standing to bring these proceedings has been sufficiently established. (12 NY Jur 2d, Buildings, Zoning and Land Controls, §§ 362, 365; Albright v Town of Manlius, 34 AD2d 419, mod on other grounds 28 NY2d 108; Webster Assoc. v Town of Webster, 112 Misc 2d 396.)
Justice Murov had occasion in Town of Islip v Serio (105 Misc 2d 1078, 1079) to summarize the general legal principles with respect to the application of section 136 of the General Municipal Law: “This section relating to the regulation of automobile junkyards applies to all towns and villages which had not adopted ordinances or regulations to license or regulate junkyards (1970 Opns Atty Gen 106). *589 However, the statute may not be construed to effect or supersede zoning ordinances or any other ordinances for the control of junkyards with the proper exercise of the police power of a town and may not be deemed to apply to any town which has any ordinance or regulation to license or regulate junkyards (General Municipal Law, § 136, subd 12; 59 NY Jur, Towns, § 177). Furthermore, section 136 of the General Municipal Law, including subdivision 13, does not apply to a town that has a local law licensing and regulating junkyards even though the local law does not contain a counterpart of said subdivision 13 (Opns St Comp, 1979, No. 343).” Clearly, where a town has an ordinance governing automobile junkyards as defined in section 136 of the General Municipal Law, by virtue of subdivision 12 of that statute, the local ordinance takes precedence. (1973 Opns Atty Gen 194; 22 Opns St Comp, 1966, 896; 21 Opns St Comp, 1965, 580.) Thus, where the local ordinance only prohibited junkyards within certain distances of homes, businesses and highways, the Comptroller nevertheless concluded that the ordinance was sufficient to preclude the application of section 136 of the General Municipal Law. (21 Opns St Comp, 1965, 580.)
Here, assuming there is a distinction between an automobile dismantling business and a junkyard, the Hemp-stead town zoning ordinance regulates automobile junkyards engaged in the dismantling of automobiles to the extent that it restricts them to industrial zones. Other junkyards are completely prohibited. Petitioners argue that all junkyards are prohibited citing Town of Hempstead v Romano (33 Misc 2d 315, 316) where Justice Brennan stated: “Since January 20, 1930, the ordinance has prohibited the use of any land in the town for a junk yard or automobile wrecking business. It has also provided (art. 14, § G-3.0): ‘Notwithstanding any other provision of this Ordinance any automobile or other junk yard in existence at the effective date of this Ordinance in a residence district shall at the expiration of three years from such date be discontinued’.” (Emphasis supplied.) Justice Brennan confronted a case involving an automobile wrecking business and junkyard located in a residential area and the only authority cited referred to a residential district. Accordingly, Town of Hempstead v Romano (supra) cannot be *590 construed as addressing the issue before this court. Moreover, both the language of section G-3.0 of article 14 of the Town of Hempstead Zoning Ordinance and the language used by Justice Brennan reflect a distinction between a junkyard and an automobile wrecking business. At least one dictionary definition (Webster’s New World Dictionary [2d Coll, ed]; “a place where old metal, paper, etc. is kept, sorted, and sold or old cars are junked.”) and several Comptroller’s opinions (see 22 Opns St Comp, 1966, 896; 21 Opns St Comp, 1965, 580) reflect such distinction.
Given the broad language of subdivision 12 of section 136 of the General Municipal Law giving preemptive effect to “zoning ordinances or local laws or any other ordinances or local laws for the control of junk yards” and since the court’s inquiry in an article 78 proceeding such as this is limited to ascertaining whether the administrative body or officer had a rational basis for the determination reached (Matter of Campus v Delany, 62 AD2d 990; Matter of Forest Hills Tenants Assn. v Joy, 91 AD2d 912), this court concludes that the challenged determination or respondent Board of Zoning Appeals must be sustained.