**NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,**

v.

**Rogers C. B. MORTON, in his official capacity as Secretary of the Department of the Interior, et al., Defendants.**

Civ. A. No. 2397–71.

United States District Court,
District of Columbia.

Feb. 1, 1972.

See also, D.C., 337 F.Supp. 167.

Thomas B. Stoel, Jr., Edward L. Strohbehn, Jr., Washington, D. C., for plaintiffs.

Thomas L. McKevitt, Washington, D. C., for Government.

## OPINION AND ORDER

RICHEY, District Judge.

This case came before the Court on the defendants' Motion to Dissolve the Preliminary Injunction, which was filed with the Court on January 17, 1972. Before the Court sets forth its ruling with respect to the pending motion, it is believed that a brief discussion of the litigation to date would be helpful.

On October 28, 1971, the Department of the Interior filed the Environmental Impact Statement with respect to its proposal under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (1970), for the oil and gas general lease sale to some 80 tracts of submerged lands off the eastern Louisiana coast. Opening of bids for the leases was scheduled for December 21, 1971, and the plaintiffs brought this action on November 1, 1971, to enjoin the proposed sale. This Court held a hearing on the plaintiffs' Motion for a Preliminary Injunction on December 16, 1971, and granted said motion, thus enjoining the sale of these leases pending compliance with the National Environmental Policy Act, 42 U.S.C. § 4331 et seq. (1970). The Government appealed, and filed a motion in the United States Court of Appeals for the District of Columbia asking for summary reversal and an immediate hearing on this Court's actions. The Court of Appeals granted the Government's request for an immediate hearing, and on December 20, 1971, heard arguments and issued an order permitting the bids to be received on condition that they remain unopened pending further order of that court. On January 13, 1972, the Court of Appeals denied the Government's Motion for Summary Reversal, stating:

"Informed by our judgment that discussion of alternatives may be required even though the action required lies outside the Interior Department, the Secretary will, we have no doubt, be able without undue delay to provide the kind of reasonable discussion of alternatives and their environmental consequences that Congress contemplated." Slip Op. at 20.

The Court is faced with one primary issue: Should the preliminary injunction issued on December 16, 1971, be dissolved? However, before the Court can make this determination, it must first decide whether the Addendum to the Final Environmental Impact Statement filed with the Court on January 17, 1972, fully complies with Section 4332(2) (C) of NEPA and the recommendations of the Court of Appeals in its decision of January 13, 1972. Section 4332(2) (C) provides in pertinent part that:

"(2) all agencies of the Federal Government shall—

\*　　\*　　\*　　\*　　\*　　\*

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and

views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;"

The Court believes that Section 4332(2) (C) of NEPA has not been complied with, since the addendum, which is essentially a draft statement, has not been submitted for comment and review by any other Federal agencies, nor have the comments and views of the "appropriate Federal, State, and local agencies" been solicited with regard to this addendum. The Government argues that the addendum is a final statement, and furthermore that the waiver executed by the Council on Environmental Quality (CEQ) removing the usual 30-day delay period before taking the proposed action as required by Section 10(b) of the Council's Guidelines, therefore the preliminary injunction should be dissolved. First, the Court does not feel that the addendum is a final statement. As was explained by Government counsel, the normal procedure is to prepare the Final Impact Statement and to circulate this statement for comment and review by appropriate Federal, State, Local and other interested agencies. In the case at bar the original Final Impact Statement was circulated for comment and review, however, this statement did not contain the proper discussion of the alternatives as is required by NEPA. Following the decision of the Court of Appeals, the addendum, which included the required discussion of alternatives, was prepared by the Department of Interior. This addendum has to date never been circulated to other Federal agencies, nor has it been sent to the appropriate State and local agencies or other parties who might be interested in the proposed lease sale. If this addendum is to be considered a part of the Final Impact Statement, then it must be subjected to the same comment and review procedures outlined by Section 4332(2) (C) of NEPA, as was required for the original Final Impact Statement which did not contain the addendum when it was first circulated.

The Court realizes that circulation of the addendum for purposes of comment and review will result in a further delay, however, as the United States Court of Appeals for the District of Columbia stated in Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 449 F.2d 1109, 1115 (D.C.Cir.1971):

> "[T]he Section 102 duties are not inherently flexible. They must be complied with to the fullest extent, unless there is a clear conflict of statutory authority. Considerations of administrative difficulty, delay or economic cost will not suffice to strip the section of its fundamental importance."

The Court finds no "clear conflict of statutory authority" or other compelling reason for not complying with Section 4332(2) (C) of NEPA. The Court is in no position to speculate as to the viability of any of the alternatives discussed in the addendum, nor can the Court in any way substitute its judgment for that of the Executive agency involved, unless the decision of the agency is found to be arbitrary, capricious, or an abuse of discretion, in which case the Court could require the agency to reconsider its decision. In this case the Court is simply requiring the Department of Interior to follow the mandate contained in Section 4332(2) (C) of NEPA. While it is quite conceivable that none of the alternatives to the proposed lease sale are feasible at this time, this fact does not mean that those Federal, State and local agencies interested should not be given the opportunity to comment on the Addendum to the Final Impact Statement as required by Congress. Whether or not the comments will be valuable in the end is not the question before this Court. The Court must only determine whether the opportunity for comment as required by

Section 4332(2) (C) was afforded. The Court finds that the opportunity was not afforded in this instance with respect to the addendum, which was an important part of the Final Impact Statement.

 Based on the foregoing, the Court rules that the Motion to Dissolve the Preliminary Injunction be and the same hereby is denied. However, this conclusion is now partially academic, because since the filing and argument of the Motion to Dissolve, the government has filed a Motion to Withdraw the Motion to Dissolve, which was argued before the Court on January 28, 1972, and taken under advisement together with the government's original Motion to Dissolve. Finally, the government has informed the Court that the lease sale originally scheduled for December 21, 1971, by the Department of the Interior was cancelled as of January 20, 1972. By virtue of this occurrence, the government now argues that the instant case, including the two motions now under advisement, is moot, because the subject of the suit—the lease sale—no longer exists. The plaintiffs have countered this argument stating that the Department of the Interior is merely indecisive as to whether or not to proceed with any future attempts to hold a lease sale of the tracts off the eastern Louisiana coast.

The plaintiffs cite the test for mootness stated by the United States Supreme Court in United States v. Concentrated Phosphate Export Association, Inc., 393 U.S. 199, 89 S.Ct. 361, 21 L. Ed.2d 344 (1968), which reads in pertinent part:

"The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' United States v. W. T. Grant Co., 345 U.S. 629, 632 [73 S.Ct. 894, 897, 97 L.Ed. 1303] (1953); see, e. g., United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290 [17 S.Ct. 540, 41 L.Ed. 1007] (1897). A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes. United States v. W. T. Grant Co., 345 U.S., at 633 [73 S.Ct. 894]." Id. at 203, 89 S.Ct. at 364.

The Court notes that the preceding case involved alleged illegal conduct under the antitrust law, and for this reason the Court feels that it is distinguishable from the case at bar. It is clear that the holding of a lease sale is not illegal. In fact the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (1970), specifically permits such actions. The crux of the plaintiffs' complaint was that the Department of the Interior had not fully complied with the requirements of NEPA, since it failed to fully discuss viable alternatives to the proposed lease sale. Since that time an addendum has been prepared which, although it has not been circulated for comment, indicates an intent on the part of the government to comply with NEPA. The Court believes that the drafting of the addendum, combined with the opinions of this Court and the Court of Appeals, reasonably assures that any future lease sales will be conducted with the provisions of NEPA in mind. In order to rule for the plaintiffs with respect to the issue of mootness, the Court believes that it would have to find that any future lease sale is illegal, because it did not comply with NEPA. The Court feels that this is too speculative.

Based on the foregoing, the Court concludes that the instant case is moot, and therefore, it is ordered that this cause be and the same is hereby dismissed, without prejudice.