TODD MART, INC., Respondent, v TOWN BOARD OF TOWN OF WEBSTER et al., Appellants.

Fourth Department, July 10, 1975

*Elliott, Stern & Calabrese (Michael J. Greene* of counsel), for appellants.

*Sutter & Summers (Donald C. Summers* of counsel), for respondent.

GOLDMAN, J. Petitioner-respondent Todd Mart, Inc. (Todd), a developer of retail shopping centers, brought this article 78 proceeding to annul a decision of the respondents-appellants, Town Board of the Town of Webster and Town of Webster (Town Board) denying petitioner's application to rezone 20 acres of land for the construction of a shopping center. Special Term reversed the Town Board's determination and remitted the matter to the Town Board "to make necessary findings of fact".

Under the Town of Webster Zoning Ordinance and Official Map which were adopted on June 26, 1969 in accordance with "the general intent of a comprehensive plan", the subject property, presently owned by petitioner, was placed in a C-S commercial shopping center district. The permitted uses in such a district are limited to single family dwellings, and various public, religious and agricultural uses (Webster Zoning

Ordinance, § 59-11A). The ordinance provides that "The Town Board may establish a PCS planned shopping center district in a C-S District in accordance with procedures set forth in Articles IV and V hereof" (§ 59-19).

In accordance with the ordinance petitioner submitted a sketch plan for the shopping center to the Webster Planning Board. The submitted plan indicated that the shopping center would be enclosed and include a theatre, bank, supermarket, general department store, and numerous other shops. After several meetings and discussions of the sketch plan application the Planning Board submitted a favorable report to the Town Board. Thereafter, on July 12, 1973 the Town Board passed the following resolution at its regular meeting:

"That the proposed Monroe Mall-Todd Mart Incorporated PUD project on the corner of Five Mile Line Road and Ridge Road, appears to meet the objectives set forth in Section 59-23 of the Zoning Ordinance and would be in the public interest.

"Further, that the project be referred to the Planning Board for progression of preliminary plans under Section 59-26 of the Zoning Ordinance."

This favorable determination was made pursuant to subsection D of section 59-25 of the ordinance which provides in relevant part that:

"Such determination or recommendations by the Town Board shall be advisory only and shall not constitute approval or disapproval of the plans for the project, nor shall it constitute a commitment or agreement by the Town Board to take any further action whether in the nature of legislation or otherwise in connection with such proposal."

Under the PUD zoning procedure the next step provided for application for Planning Board approval of a preliminary development plan, followed by a public hearing by the Town Board and then reconsideration by that board. Article IV, section 59-26 of the ordinance provides:

"If after the public hearing the Town Board shall determine that the proposed development conforms to applicable state, county and town laws, ordinances and regulations, and is in the public interest, it shall adopt a resolution declaring its intention to zone the applicant's property for the proposed planned unit development upon the applicant receiving approval of final plans therefor from the Planning Board and

upon the developer meeting such additional conditions as the Town Board shall deem appropriate in each case and shall set forth in such resolution."

Eventually the Planning Board on December 20, 1973 gave preliminary approval of the plan subject to conditions relating to drainage, signs, construction of an access road and other matters, and it referred the application to the Town Board. After substantial opposition voiced by several residents at public hearings held on February 14 and May 9, 1974 the Town Board on May 23, 1974, by unanimous resolution, denied "the request for 'intent to re-zone' ". The Town Board's refusal to declare its intention to rezone was supported by 18 specific findings included among which were incompatibility with the existing residential character of the area; increased automobile traffic, noise, and congestion on the highway, close to the busiest intersection in the town; inadequate flood control plans as affecting soil erosion and pollutants; poor and unsuitable soil conditions for commercial development which would be a source of potential blight; material changes in the ultimate access from the original plan which had been approved by the Planning Board; petitions in opposition signed and submitted at the two public hearings by 587 residents; and no adequate provision for buffers. The Town Board in its findings concluded that petitioner had not proved that the proposed shopping center would create "a more desirable environment" and that approval of "this shopping center would not be in the public interest".

After this action by the Town Board, petitioner commenced the present article 78 proceeding to annul the Town Board's determination and to secure an order requiring that its property be rezoned as requested. The petition also alleged that the zoning ordinance as applied by the Town Board was "unlawful and illegal and an unconstitutional deprivation of petitioner's due process and confiscatory". Special Term, noting that the constitutionality of the ordinance was not questioned, properly stated that the "question for determination is whether the action of the Town Board is legislative or administrative". The court answered the question by holding that the Town Board's denial of the application for a declaration of "intent to rezone" was administrative in nature and was not legislative. Special Term with particularity reviewed the factual findings of the Town Board and held that these findings were "conclusory statements" which are "arbitrary and unrea-

sonable" and therefore required remand to the Town Board for further factual development.

This appeal presents a relatively new concept in New York zoning law—the planned unit development (PUD). Essentially, "The planned unit development technique is a legislative response to changing patterns of land development and the demonstrated shortcomings of orthodox zoning regulations." (1 Anderson, New York Zoning Law and Practice [2d ed], § 8.28.) The "changing patterns" are the relatively recent prevalence of large scale developments, such as new towns and suburbs around urban communities; the related shortcomings of orthodox zoning are its inflexibility and inability to mix diverse land uses within a localized district. The planned unit development concept has evolved to meet these specific land-use control problems. It made available to communities a maximum choice in types of environment. It creates a flexible floating zone which, as in the instant case, hovers without definite boundaries until subsequent action by the zoning authority affixes it to an identified area. It multiplies the community's options to provide for compatible and efficient uses of land.

The usual PUD technique, as in the Webster Zoning Ordinance, involves a two-stage process: 1—description of the permissible type or types of PUD districts in the original zoning ordinance, and 2—location and approval of particular PUD districts by supplemental action at a later time. This secondary stage usually involves regulation of the developer's land-use planning by public planning officials and then formal amendment of the zoning ordinance and map to locate an approved PUD district (1 Anderson, New York Zoning Law and Practice [2d ed], §§ 8.28–8.34). The instant case raises the issue of whether this secondary determination approving or rejecting a PUD zoning change is a legislative or administrative determination. If the determination of the Webster Town Board is "administrative", then petitioner's proper procedural form is the article 78 proceeding which it instituted. If, however, the determination is "legislative", then an article 78 review is inappropriate; for in that event petitioner's proper procedural course would be a declaratory judgment action to test the validity or constitutionality of the legislative action. This procedural distinction is of limited significance in the case at bar because the courts under CPLR 103 (subd [c]) may review challenged zoning determinations even though the

improper procedural form has been employed. (See *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449, 457–458; *Matter of Willey v Garnsey,* 45 AD2d 227, 228.) More importantly, however, the "legislative-administrative" distinction determines the substantive standard for judicial review of the zoning determination. If the determination is characterized as administrative, a more exacting judicial inquiry is permitted, that is, whether the challenged determination is contrary to local standards, arbitrary, capricious, discriminatory, an abuse of discretion, or supported by substantial evidence (CPLR 7803). On the other hand, if the challenged determination is legislative, judicial review is more limited. Such a review may only ascertain whether the local legislative body had authority to act as it did under its zoning enabling statute (see Town Law, §§ 260–264) or whether the legislative action is an unconstitutional taking or deprivation of due process or equal protection under the Fifth and Fourteenth Amendments. Because such a due process challenge questions the reasonableness of the police power regulation (zoning), the substantive standard for review of legislative zoning determinations approaches the "arbitrary-capricious-discriminatory" standard used in reviewing purely administrative determinations. See, *Dauernheim, Inc., v Town Bd. of Town of Hempstead* (33 NY2d 468, 471–472) [an action seeking zoning ordinance amendment where the court analogized two standards for granting an administrative variance]; *Matter of Bernhard v Caso* (19 NY2d 192, 197) [denial of permit upheld because Town Board's decision was based on the public interest]; *Rodgers v Village of Tarrytown* (302 NY 115, 121–123) [constitutionality of floating zone].

Because of the paucity of appellate decisions in our State dealing with the distinction between "administrative" and "legislative" actions in connection with planned unit development zoning, we turn to other jurisdictions which have dealt with the problem. A majority of such jurisdictions hold that the secondary determination, whether to approve a particular planned unit development district, is a legislative function exercised by the local zoning authority. Last year the Supreme Court of Washington stated our position succinctly in the imposition of a PUD on a specific parcel of land. In commenting on the legal nature and effect of the statute it stated "[i]t is inescapable that application of the PUD to this tract constituted an act of rezoning." *(Lutz v City of Longview,*

83 Wn 2d 566, 569.) Similar precedents holding the requirement of rezoning to be a legislative act are *Village 2 at New Hope* (429 Pa 626) [zoning ordinance establishing a PUD is presumed valid legislation]; *Moore v City of Boulder* (29 Colo App 248) [rezoning a single parcel within single family residence district to PUD district is a legislative act]; *Orinda Homeowners Committee v Board of Supervisors* (11 Cal App 3d 768) [ordinance rezoning for a residential PUD is legislative function].

Turning to the Town of Webster ordinance, section 59-19 provides the authority for the Town Board's action. It is couched in precatory language and provides that "[t]he Town Board *may establish* [emphasis added] a PCS Planned Shopping Center District in a C-S District in accordance with the procedures". These procedures required three steps by the board, the last of which, in order to give approval of final development plans, is that the board (only after the public hearing) *"shall* then *enact* the *legislation* to create the appropriate planned unit development district" (emphasis added). There is no suggestion of delegation of final authority to the Planning Board. The standards established by the ordinance are certainly no less broad than the general standard applied to local legislatures when enacting or amending zoning ordinances (Town Law, §§ 261, 263). Surely, the "intent to rezone" is no less a legislative act than an amendment to zoning ordinances and must be performed by the Town Board.

Support for this conclusion is found in *Rodgers v Village of Tarrytown* (302 NY 115, 121, *supra*). In *Rodgers* the village legislative body enacted an ordinance authorizing 10 acres zoned for garden type apartments. These zones were "floating" until located on the zoning map by subsequent amendment of the zoning ordinance by the trustees, the local legislative body. In affirming the dismissal of an action to declare the floating zone provision invalid the Court of Appeals treated this second-stage zoning determination as a "legislative" act and stated that "the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties should be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing

such arbitrariness is imposed upon him who asserts it" *(Rodgers,* at p 121). The Town of Webster's planned unit development concept involves an analogous two-stage legislative process and this standard of "reasonableness" required by *Rodgers* governs judicial review of the Town Board's decision.

Petitioner contends that there is a distinction between the "floating zone" in *Rodgers* and Webster's ordinance in that the Webster planned shopping center district can only be located in a single zone, the C-S district, whereas in *Rodgers* the floating apartment zone could be located in any of the previously established zones. Thus, argues petitioner, the board completed the "legislative" zoning decision in 1969 when the C-S district was written into the ordinance and subsequent decisions on proposed shopping center districts required merely administrative standards. Although the board did restrict its discretion to approve planned shopping centers to existing C-S districts, it does not follow that the board's secondary decision to rezone or not to rezone was "administrative" rather than "legislative". The Zoning Ordinance and Master Plan did not limit the C-S district use to shopping centers only. Other residential and commercial uses were permitted, as well as public uses. Petitioner's position would deprive the PUD technique of its most important ingredient, its flexibility by ignoring the broad legislative discretion which the Town Board reserved to itself (Webster Zoning Ordinance, § 59-26[D]).

Petitioner cites *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston* (30 NY2d 238) and *Matter of Lemir Realty Corp. v Larkin* (11 NY2d 20) in support of its contention that the town's PUD procedures are analogous to an application for a special use permit, which involves only administrative action even though the local legislature reserves authority to make the determination. The distinguishing factor between special use permits and planned unit developments is the size and significance of the proposed development. Whereas special use permits usually seek approval for a specified single use on a small parcel, such as service stations and swimming pools, the PUD is by its very nature a multi-use proposal for large scale developments such as shopping centers, planned integrated communities (new towns), or similar multi-uses on large parcels of land. It is obvious that petitioner's proposed shopping center of many large and small stores, including a department store, a super-

market, a theatre and a bank, constructed on 20 acres of land has a greater impact on the body politic and the community in which it is planned than application to convert a small parcel to a single use. A broad determination by the town's legislative body is more appropriate for this task than an administrative determination made according to specified standards. The procedures set forth in the town's zoning ordinance indicate that such a broad, legislative determination was intended (Webster Zoning Ordinance, §§ 59-24–59-27).

Lastly, we turn to a brief consideration of the constitutionality of the board's action as applied to petitioner's application. Petitioner does not urge that the board's determination was in violation of the zoning enabling legislation (Town Law, §§ 261–284). Nor has petitioner presented any evidence of inability to make a reasonable financial return by employing other permissible C-S uses, in support of its allegations that the zoning ordinance as applied is confiscatory in violation of the Fifth and Fourteenth Amendments (cf. *Socha v Smith,* 33 AD2d 835, affd 26 NY2d 1005). Therefore, the remaining issue is whether the board's determination deprives petitioner of due process of law, that is, whether its determination is an unreasonable exercise of the zoning, police powers. *Rodgers v Village of Tarrytown* (302 NY 115, 121, *supra)* imposes the burden of proving the legislative zoning decision unreasonable squarely upon petitioner. If the decision is "fairly debatable", the Legislature's judgment is conclusive (also, see, *Matter of Town of Bedford v Village of Mt. Kisco,* 33 NY2d 178, 186; *Matter of Willey v Garnsey,* 45 AD2d 227, 228, *supra).* The arguments which were advanced for and against the proposed shopping center were indeed "fairly debatable". The Planning Board's role was purely advisory and the ultimate decision had to be made by the elected, legislative officials. No evidence was produced to support a judicial determination that the board's action was arbitrary or discriminatory.

The judgment should be reversed and the petition dismissed.

MARSH, P. J., MOULE, MAHONEY and WITMER, JJ., concur.

Judgment unanimously reversed without costs and petition dismissed.