OPINION OF THE COURT
Morris Slifkin, J.
In a proceeding pursuant to CPLR article 78, petitioner corporation seeks to annul, reverse, and set aside a determina *436 tian of respondent planning board disapproving petitioner’s application for site plan approval.
Petitioner owns a vacant parcel of approximately 1.7 acres which is bounded on the east by a street named Windle Park and on the west by Franklin Street. Petitioner also owns a second parcel of approximately 15,000 square feet across and on the easterly side of Windle Park. The larger parcel, which is the one of concern herein, has an approximately 10% slope from Windle Park which increases to 50% grade as it slopes down towards Franklin Street.
The property is located within a "multi-family M-l” zone which permits the erection of a six-story residential building provided one parking space and 1,000 square feet of lot area are allocated to each apartment. The statute would allow the construction of 73 units on petitioner’s property.
The building proposed by petitioner consists of 60 dwelling units with 91 parking spaces (placing 30 parking spaces on the smaller parcel). It complies with all other requirements of the applicable ordinance (with one possible exception to be hereinafter discussed). The only vehicular entrance into the building is located on Windle Park. The 60 parking spaces on the main plot would be between Windle Park and the building. The front of the building is designated by petitioner, for purposes of zoning ordinance compliance, as being on Franklin Street. Since the building is oriented to the Windle Park side of the property, it is respondent’s contention that this designation is a violation of the ordinance. If respondent’s contention is upheld, it would mean that the parking spaces would have to be moved to the Franklin Street side of the building.
At the hearing preceding the respondent’s determination, as well as at the return of this proceeding, petitioner’s counsel contended that because of the grade problem, this would entail a parking structure and a concomitant connecting elevator, the cost of which would effectively terminate the project.
A reading of the hearing minutes and other documents does not disclose reliance upon this interpretation of the statute by respondent. Rather, respondent members sought to evaluate the over-all impact of the project upon the surrounding community. Windle Park is a narrow street, having a width of about 26 feet. There are several multifamily dwellings on Windle Park built prior to the ordinance, that are nonconforming in that they have no parking facilities.
*437 The answer to the petition sets forth respondent’s reasons for rejecting petitioner’s site plan. There is the claim that the site plan puts the parking in the front of the building, in violation of the ordinance. In addition, respondent claims that there would be increased traffic congestion, increased competition for parking spaces and increased environmental hazards, exacerbated by the fact that 100% of the vehicular traffic from and to the building would be on and over Windle Park. Further, it is claimed that the proposed building would be incompatible with the area and “not in harmony with surrounding structures, resulting in a substantially increased population density in an already crowded neighborhood.”
The first issue to be considered is whether the use of the main entrance side of the building as the “rear” is violative of the zoning ordinance. Respondent claims that since the Windle Park side of the building is in reality the front of the building, the provision for parking on the Windle Park side of the property violates the zoning ordinance ban on parking in front of the building.
The zoning ordinance does not define "front” of the property. It does define a lot as being “Land occupied or to be occupied by a building * * * and having its principal frontage on the street”. Petitioner takes the position that this language means that frontage is the side facing the street and that, if the property fronts on two streets, the landowner has a choice of designating which is the front. The respondent counters with the argument that the word "front” carries an everyday meaning which does not entail the ambiguity decried in Matter of Allen v Adami (39 NY2d 275) and relied upon by petitioner.
The court agrees that the word "front” carries a normal meaning consistent with respondent’s interpretation. However, this interpretation does not justify the planning board’s disapproval of petitioner’s site plan. A reading of the minutes of the vote of disapproval discloses that there was no reliance upon this alleged violation of the ordinance. In fact, the planning board proceeded upon the advice of counsel that petitioner could designate any side fronting on a street as the "front”.
Moreover, the purpose of the ordinance would not be served by dictating that the front door is the front for off-street parking purposes. The ordinance was designed for aesthetic considerations. Where the plot runs through the block, the *438 parking side will be visible from one street or the other. Here, the respondent attempts the argument that the off-street parking provision deals with the congestion problem. However, that argument must fail inasmuch as a plot that is not block-through will empty its traffic onto the street in front no matter where the parking site is located. Also, even if the plot is block-through, there is no requirement that the cars empty or enter from the back street. Finally, the ordinance could not envision that the back street would be a more desirable conduit from the planning board’s view.
Having rejected the claim that respondent’s determination was based on a violation of the zoning ordinance, the court turns to the question of whether section 7-725 of the Village Law vests respondent with discretion in passing upon site plans.
Section 7-725 was enacted in 1976 and has not had the benefit of analysis in any reported decision. A parallel section of the Town Law (§ 274-a) was judicially construed, but only with respect to a subdivision not in issue here (Matter of Boxer v Town Bd. of Town of Cortlandt, 60 AD2d 913). In Boxer, it was held that the town board could not exercise appellate review of the planning board; interestingly, the Tarrytown ordinance questionably provides for appellate review by the board of trustees, but such appellate review was not exercised here. The provision of section 7-725 of the Village Law with which we are here concerned, reads in pertinent part as follows: "Planning board approval of site plans. The board of trustees may, as part of a local law adopted pursuant to this article or other enabling law, authorize the planning board to review and approve, approve with modifications or disapprove site plans, prepared to specifications set forth in the said local law and/or in regulations of the planning board, showing the arrangement, layout and design of the proposed use of the land shown on such plan. Such local law shall specify the uses for which such approval shall be required and the elements to be included in such plans submitted for approval; such elements may include, where appropriate, those relating to parking, means of access, screening, signs, landscaping, architectural features, location and dimensions of buildings, impact of the proposed use on adjacent land uses and such other elements as may reasonably be related to the health, safety and general welfare of the community. When an authorization to approve site plans is *439 granted to a planning board pursuant to this paragraph, the terms thereof may condition the issuance of a building permit upon such approval by the planning board.” (Village Law, § 7-725, subd 1, par a.)
Section 10 of the Tarrytown ordinance was amended in response to section 7-725 and reads in pertinent part as follows:
"The Planning Board shall review the Plan, or any amendment of it. The approval required by this section or the refusal to approve shall take place within 30 days and after the time of the submission of the Plan for approval; otherwise such Plan shall be deemed to have been approved. In considering the approval of the Site Development Plan, the Planning Board shall take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general and the residents of the immediate neighborhood in particular, and shall make any appropriate conditions and safeguards in harmony with the general purpose and intent of this ordinance and particularly in regard to achieving:
"(a) Maximum safety of traffic access and egress.
"(b) A site layout (including the location, power, direction and time of any outdoor lighting of the site) which would have no adverse effect upon any properties in adjoining residence districts by impairing the established character, or the potential use, or properties in such districts.
"(c) The reasonable screening at all seasons of the year, of all playgrounds, parking and service areas from the view of adjacent residential properties and streets.
"(d) Conformance of the proposed Site Development Plan with such portions of the master plan of the Village of Tarrytown as may be in existence from time to time.
"(e) In applicable cases, a drainage system and layout which would afford the best solution to any drainage problems.”
It is this court’s opinion that the discretion given to the planning board in the ordinance and exercised by the planning board in this case is not authorized by section 7-725 of the Village Law.
The respondent is seeking to exercise more power than any official has even been given in this area. As interpreted by the ordinance, section 7-725 would allow the planning board the right to impose conditions upon the landowner more stringent *440 than those imposed by the zoning ordinance. In effect, the planning board is claiming the power to spot zone by quasi-judicial fiat.
Besides serious constitutional questions which this claim raises, the court is convinced that the Legislature did not intend to convey this power to the planning board. As a practical matter, it is inconceivable that such a widespread change in zoning law would go completely unheralded. More important is the fact that the planning board would have greater powers than the board of trustees. Section 7-725 is enabling legislation only; a board of trustees need not pass an ordinance with respect thereto. Indeed, the board of trustees need not create a planning board (Village Law, § 7-718). In either eventuality, there would arise the anomalous result that the creating body would not be entitled to exercise that power sought herein by respondent (see Nemeroff Realty Corp. v Kerr, 38 AD2d 437).
The court is convinced that the legislative intent was much more restrictive and conservative than that which respondent advances. Section 7-725 was enacted to enable the municipality to more efficiently ensure compliance with the many lawfully enacted restrictions on land use. The language of the statute supports this interpretation. The statute speaks of the ordinance specifying the elements to be included in the site plan where appropriate. It is reasonable to conclude that the elements would be appropriate, on an ordinance-wide basis, only where the zoning ordinance included those elements as part of its regulatory scheme. Section 7-725 of the Village Law then enables one agency with expertise to oversee the entire plan before it commences, thus ensuring total compliance before and during construction. It goes no further than that. To the extent that the Tarrytown ordinance creates additional power in the planning board, it is invalid.
The petition is granted.