OPINION OF THE COURT
David O. Boehm, J.
On October 23, 1980 the Webster Town Board passed a resolution declaring its intent to rezone a large parcel of land to permit the construction there of a regional shopping mall. Since that time certain Webster residents and a competing developer, Webster Associates, Inc., have attempted to overturn that rezoning decision by commencing *398 a CPLR article 78 proceeding and a declaratory judgment action against the Town of Webster and its board members and against the owners of the subject parcel, Bruce C. Hegedorn and Expressway Associates (Expressway).
Generally, these new actions allege three grounds for overturning the town board’s resolution: (1) That the decision to rezone without town planning board approval contravened the Town of Webster Zoning Ordinance; (2) That the resolution was impermissibly tainted by the bias of town board member Irving Kent; and (3) That the town board failed in several respects to comply with the State Environmental Quality Review Act (SEQRA) and its companion regulations.
This is, in many respects, a companion case to Bliek v Town of Webster (104 Misc 2d 852) in which several of these same parties appeared before me regarding an unsuccessful attempt by Webster Associates to rezone a competing site in Webster, one-half mile from the HegedornExpressway parcel. The current actions are before the court on motions brought by all of the parties as follows:
1. The petitioners-plaintiffs (hereinafter petitioners) seek an order for examinations before trial of Town Supervisor Irving Kent and Ronald C. Lyon, P. E., a consulting engineer, pursuant to CPLR 408.
2. Respondents Kent, the Town of Webster and Expressway move to consolidate the declaratory judgment action and the article 78 proceeding, pursuant to CPLR 602 (subd [a]). This motion is granted (Bliek v Town of Webster, 104 Misc 2d 852, 859-860, supra).
3. Respondents Kent and the Town of Webster move to dismiss the consolidated action, pursuant to CPLR 3211 (subd [a], par 7), for failure to state a cause of action, for summary judgment pursuant to CPLR 3212 in the consolidated action, and for dismissal of the actions as to Webster Associates, pursuant to CPLR 3211 (subd [a], par 3), for lack of standing.
4. Respondent Expressway seeks dismissal of the article 78 proceeding, pursuant to CPLR 7806, and summary judgment in the declaratory judgment action, pursuant to CPLR 3212.
*399 5. Respondent Hegedorn moves for summary judgment in the declaratory judgment action.
FACTS
On October 18, 1979, Expressway announced its intention to build a regional shopping center on a 95-acre parcel of land located in the Town of Webster and zoned a “CS” (commercial shopping center) district. Since the town’s zoning ordinance permitted such a project only in a “PCS” (planned shopping commercial) district Expressway first had to obtain a rezoning of its parcel through the procedures provided by the Webster Town Code and the State Environmental Quality Review Act (SEQRA) (ECL art 8) and its companion regulations (see, generally, Bliek v Town of Webster, supra).
On May 21, 1980, having consulted with various State and regional agencies, Expressway filed a draft environmental impact statement (DEIS) for the town board’s approval. On June 12,1980 the board accepted the DEIS with respect to scope, content and adequacy, pursuant to ECL 8-0109 (subd 5) and 6 NYCRR 617.8 (b), but only after Expressway had submitted additional material consisting of 33 pages of additions and revisions to the DEIS and a new report on air quality.
On July 14, 1980, the town board, during the period provided for public comment on the DEIS, held a public hearing on the draft statement, which was, under the circumstances, mandatory (see 6 NYCRR 617.8 [d]). At the hearing, the public learned for the first time that more additions and revisions to the DEIS had been submitted to the board that day. The board, despite requests from petitioners and others, declined to refile and recirculate the DEIS as amended. It did, however, extend the public comment period for an additional month.
The SEQRA process was then completed in normal course. The final environmental impact statement (FEIS) was submitted on September 16, 1980 and filed and circulated on September 26, 1980. This document consisted of the DEIS, public and agency comments thereon, and a fair amount of new material generated in response to the public comments, all as allowed by SEQRA (6 NYCRR *400 617.14 [h]). Perhaps the most significant new material was an amendment to that portion of the DEIS which discussed alternatives to the proposed development as required by SEQRA (ECL 8-0109, subd 4; 6 NYCRR 617.14 [f] [5]). The initial submission treated this subject in one page; the revision encompassed 17 pages.
While the process of environmental review was under way, Expressway was also qualifying its project in the multistep zoning procedure mandated by the Webster Town Code Planned Unit Development (PUD) statute (Town of Webster Zoning Ordinance, § 59-21 et seq.). One of the requirements of the ordinance was that Expressway submit a “preliminary development plan” to the town planning board for its approval (Town of Webster Zoning Ordinance, § 59-26 [A], [B]). After heated public hearings, during which Town Supervisor Kent expressed his support for the Expressway project and accused certain planning board members of opposing it in favor of a competing Webster Associates project, the planning board disapproved Expressway’s preliminary development plan by a 4-2-1 vote.
Thereafter, on August 11, 1980, the planning board notified the town board of its disapproval of the mall proposal. Notwithstanding the planning board’s determination, the town board decided, on October 16, 1980, to proceed with the application and scheduled a public hearing on a declaration of intent to rezone the property (Town of Webster Zoning Ordinance, § 59-26 [D]). Such a declaration is for all intents and purposes the final step in Webster’s zoning process (Bliek v Town of Webster, supra).
On October 23, 1980 the town board, as the lead agency under SEQRA, passed a resolution stating its required findings and conclusions with respect to the FEIS (ECL 8-0109, subd 8; 6 NYCRR 617.19 [a], parts II, III). Immediately thereafter, the board approved the preliminary development plans and passed a declaration of intent to rezone the property. This challenge ensued.
STANDING
The respondents contend that Webster Associates lack standing to maintain this action. Moreover, all but *401 respondent Hegedorn (who withdrew his objection at oral argument) claim that the other petitioners, as nominees of Webster Associates, are equally devoid of standing.
Taking the claims in inverse order, it is apparent that the individual petitioners have standing to sue. Regardless of their motivation, they allege residence in the Town of Webster, a denial of due process under SEQRA, and detrimental environmental impacts on their homes and properties which will occur if the rezoning takes place and the proposed mall is built. These allegations are sufficient to entitle them to challenge the town’s rezoning and SEQRA decisions (Bliek v Town of Webster, supra; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222).
The standing of Webster Associates, however, is a different matter. It neither resides nor owns land in the town. Its only connection to this proceeding is that it is an optionee of a rival tract upon which it is seeking to obtain rezoning in order to develop its own regional mall. Its claim is, nevertheless, that as an optionee of land within the town it stands in the shoes of the landowner and thus may assert any environmental claims which the owner has. In support of its position, Webster Associates cites two New York cases, Matter of Taxpayers’ Assn. of South East Oceanside v Board of Zoning Appeals of Town of Hempstead (301 NY 215) and Matter of Atlantic Refining Co. v Zoning Bd. of Appeals of Vil. of Sloan (14 Misc 2d 1022), in which contract vendees were granted standing. In addition, it claims standing under Matter of Dairylea Coop, v Walkley (38 NY2d 6), wherein the Court of Appeals held that standing to challenge administrative action devolves upon anyone with an interest which is arguably within the zone of interests protected by the statute at issue.
Webster Associates’ status as an optionee is insufficient to furnish the standing necessary to maintain these actions. At oral argument petitioner conceded that its actual interest is purely commercial. The parcel affected by the town’s action is not, as in the cases Webster Associates cites, the one upon which petitioner holds the options. While its position might be different if it were a nearby landowner, or if it held title to the subject parcel (see, e.g., Town Law, § 282; Albright v Town of Manlius, 34 AD2d *402 419, mod on other grounds 28 NY2d 108), its standing to challenge zoning decisions as a mere optionee is limited at best to decisions concerning the land upon which it holds the option.
As to its SEQRA claims, the only substantive allegation of potential injury it claims is an economic one, and this, without more, is insufficient (Bliek v Town of Webster, 104 Misc 2d 852, 859, supra; see Robinson v Knebel, 550 F2d 422, 425). Webster Associates’ claim that its concerns fall within the zone of interests of the statute because its proposed mall is an alternative which must be considered in evaluation of Expressway’s proposal is also without merit for reasons more fully set forth hereinafter.
Accordingly, I find that Webster Associates lacks standing and grant respondents’ motions to dismiss as to it (CPLR 3211, subd [a], par 3). However, respondents’ motions are denied as to the individual petitioners.
THE PLANNING BOARD DISAPPROVAL AND SECTION 274-A OF THE TOWN LAW
The Webster PUD ordinance contemplates involvement of the town planning board at three steps in the rezoning process: approval of sketch plans (Town of Webster Zoning Ordinance, § 59-25); approval of preliminary development plans (§ 59-26); and approval of final development plans (§ 59-27).
Upon completion of preliminary review of the sketch plans, the planning board is required to render a favorable or unfavorable report to the applicant and the town board (§ 59-25 [C]). The town board must then, regardless of the report, review the sketch plans to determine whether they meet the objectives of the statute. This stage of review is advisory only, and does not constitute approval or disapproval of the project (§ 59-25 [D]). The applicant must then submit a preliminary development plan to the planning board within six months (§ 59-26).
Upon receipt of the preliminary development plan, the planning board must act on it within 60 days (§ 59-26 [C]). The ordinance next provides: “(D). If the Planning Board approves the Preliminary development plans, the Town Board shall hold a public hearing upon a proposition to *403 zone the applicant’s lands for the proposed planned unit development.” Here, the planning board disapproved the preliminary development plans, but the town board proceeded with the application notwithstanding. The petitioners claim that the planning board’s disapproval terminated the rezoning process and that the town board was without power thereafter to approve the rezoning, citing section 274-a of the Town Law, enacted in 1976. That section provides that a town may enact an ordinance delegating final authority to the planning board to approve or disapprove site plans (§ 274-a, subd 1). It further provides that appeals from such decisions must be taken by article 78 proceedings (§ 274-a, subd 3).
However, the current Town of Webster Zoning Ordinance antedates the enactment of section 274-a of the Town Law by some seven years and has been construed by the Fourth Department with respect to a similar issue in Todd Mart v Town Bd. of Town of Webster (49 AD2d 12) which was a case where the town board disapproved plans which had been previously approved by the planning board. In upholding the town board’s authority to do so, the court found no delegation of final authority to the planning board and concluded (p 20) that “The Planning Board’s role was purely advisory and the ultimate decision had to be made by the elected, legislative officials.”
The Fourth Department has also considered the effect of section 274-a of the Town Law on pre-existing zoning ordinances. In Matter of Spinosa v Ackerman (72 AD2d 976, affg 98 Misc 2d 1073) the court affirmed the decision of my learned colleague, Justice Robert H. Wagner, validating a pre-1976 zoning provision of the Town of Penfield, New York, which expressly delegated final site plan authority to the planning board. In his opinion, Justice Wagner pointed out that this delegation would have been ineffective prior to the enactment of section 274-a. The Second Department reached the same conclusion with respect to special permit procedures (Matter of Stato v Squicciarini, 59 AD2d 718, app dsmd 44 NY2d 816). ,
The only other case which speaks to the effect of section 274-a is Matter of Boxer v Town Bd. of Town of Cortlandt (60 AD2d 913). In Boxer, the Second Department invali *404 dated a portion of a zoning statute enacted after the effective date of section 274-a of the Town Law which sought to vest appellate jurisdiction of planning board determinations in the town board. In doing so, the court relied upon the language of subdivision 3 of section 274-a of the Town Law which mandates an article 78 proceeding.
On the basis of Boxer (supra) and Spinosa (supra), the petitioners claim that section 274-a of the Town Law serves to “breathe life” into the authority granted the planning board by the Town of Webster Zoning Ordinance, and that it makes that authority final and legislative in nature. However, Boxer involved a subsequently enacted statute, while Spinosa and Stato (supra) involved preexisting statutes which contained express delegations to the planning board. Here, in contrast, we have a preexisting ordinance, unchanged after the enactment of section 274-a, which calls for planning board action that has been judicially declared to be advisory only (Todd Mart v Town Bd. of Town of Webster, 49 AD2d 12, 18-20, supra).
At oral argument, petitioners’ counsel argued that the language of section 59-26 of the Town of Webster Zoning Ordinance allows the town board to proceed if the planning board approves preliminary development plans, and that it does not speak to the effect of disapproval. However, the ordinance does not expressly prohibit the town board from rezoning property for a PUD if the planning board disapproves, nor does it limit the town board’s authority to grant the rezoning to cases in which the planning board has approved preliminary development plans. In short, nothing in the ordinance restricts or renders conditional the town board’s authority to consider taking legislative action if there is a negative finding by the planning board. Although the ordinance simply compels certain actions if the planning board approves, it does not prohibit these same actions if the board disapproves. Had the town wished to vest final authority in the planning board, it could have done so by enacting a new statute containing such authority in express terms, something it did not do. All the ordinance speaks to are the mandatory procedures to be followed in cases in which the planning board approves the plans.
*405 Moreover, even if the ordinance were to make planning board approval of a preliminary development plan an absolute prerequisite to further action by the town board, there would be a serious question as to its validity. The authority of a town to enact zoning and planning legislation is purely statutory, and a town may not delegate that power beyond the measure granted by the Legislature (Nemeroff Realty Corp. v Kerr, 38 AD2d 437, affd 32 NY2d 873). While section 274-a of the Town Law permits a town board to delegate to its planning board the approval of site plans, it does not permit the abdication of its legislative authority to determine the appropriateness of proposed rezoning (see Dean Tarry Corp. v Friedlander, 103 Misc 2d 435).
Petitioners have produced a letter opinion from the State Comptroller suggesting that section 274-a of the Town Law made planning board approval “a prerequisite to any further action on the plan by the Town Board” and stating that the only avenue of appeal from the planning board’s disapproval is an article 78 proceeding instituted pursuant to subdivision 3 of section 274-a of the Town Law (Opns St Comp, 1980, No. 80-656).
While this opinion may be entitled to some weight (see Schampier v Office of Gen. Servs. of State of N. Y., 99 Misc 2d 1049, revd on other grounds 73 AD2d 1011; Shpack v Baretti, 75 Misc 2d 901), it is not binding on the court (Thruway Motel of Ardsley v Heilman Motel Corp., 11 Misc 2d 418; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 129) and in this case I find it unpersuasive.
Accordingly, I find that the power delegated to the planning board in the Webster PUD statute is procecural rather than legislative and that section 274-a of the Town Law does not operate to change the nature of this power. It follows that the town board’s actions after the planning board’s disapproval of preliminary development plans were within its powers and properly exercised.
DISQUALIFICATION OF KENT
The petitioners seek an order requiring respondent Kent to disqualify himself from any further participation in the rezoning or SEQRA processes and also seek to *406 invalidate the rezoning and SEQRA processes heretofore completed, on the ground that Kent publicly expressed his preference for the Expressway Mall both prior to and during consideration of the developers’ application. Petitioners further seek discovery by way of an examination before trial to determine the nature of his interest in the project.
I note preliminarily that while the rezoning process is purely legislative (Todd Mart v Town Bd. of Town of Webster, 49 AD2d 12, 18, supra),[1] The activities of the town board in assuring SEQRA compliance are administrative in nature (Bliek v Town of Webster, supra, at p 859). This is significant because the issue of disqualification must be resolved differently for each type of process.
(a) The Rezoning Process
It is a well-settled principle in New York that the courts may not inquire into personal motives behind the enactment of legislation (Kittinger v Buffalo Traction Co., 160 NY 377, 388; Kenford Co. v County of Erie, 62 AD2d 1176, 1177; Sloane v Weber, 52 AD2d 1055).
However, the General Municipal Law makes such inquiry appropriate in the proper case by requiring that “[e]very application * * * for a * * * change of zoning * * * shall state the name, residence and the nature and extent of the interest of any * * * officer * * * of such municipality * * * in the person, partnership or association making such application * * * to the extent known to such applicant.” (General Municipal Law, § 809, subd 1.) The statute goes on to define four areas of specific “interests” to which this provision applies. Three involve ownership of or direct employment by the applicant, and the *407 fourth involves contractual relationships with the applicant dependent or contingent upon the success of the application (General Municipal Law, § 809, subd 2, pars [a] -[d]).
In Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo (96 Misc 2d 1, 9, affd on other grounds 69 AD2d 320) the court, finding that section 809 is not exclusive but speaks only to “those situations in which there is a conclusive presumption of a conflicting interest” held that a board member should have disqualified himself from voting to grant a construction permit to a client of his advertising agency. Similarly, in the numerous out-of-State opinions cited by petitioners (see, generally, Zoning-Disqualification of Officer, Ann., 10 ALR3d 694) courts have set aside zoning decisions because of conflicts of interest where economic ties of varying degrees were found.
However, nowhere in the petitioner’s papers are there any allegations which would support an inference of actual or apparent economic impropriety on Kent’s part (see Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo, 96 Misc 2d 1, 9-10, supra; General Municipal Law, § 809). In the absence of such allegations, I find that the pleadings fail to state a cause of action as to Kent’s acts performed in a legislative capacity and that there is no triable issue of fact in this regard. Further, to the extent that they seek to depose Kent in pursuit of this claim, petitioners’ motion is denied (Kenford Co. v County of Erie, 62 AD2d 1176, 1177, supra).
(b) The SEQRA Process
Petitioners’ allegations of Kent’s bias in favor of Expressway Associates pose a more troublesome problem when Kent’s conduct is viewed in an administrative context. Respondents argue that the standards of disqualification governing legislative acts should apply in the SEQRA proceeding, but there can be little doubt that the process is a quasi-judicial one. The regulatory structure (6 NYCRR 617.1 et seq.) which was promulgated to implement SEQRA is replete with provisions aimed at securing specific factual input from the applicant and other interested *408 parties to aid the lead agency in making its final determination and in drafting its mandatory findings (see, e.g., 6 NYCRR 617.8 [EIS procedures and public hearing requirements thereon]; 6 NYCRR 617.9 [required findings]; 6 NYCRR 617.14 [EIS content requirements]).
“A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding.” (Morgan v United States, 298 US 468, 480.)
This being the case, the question arises as to whether Kent’s professed preference for the Expressway Associates’ proposal so tainted the proceedings as to deny the parties that “unbiased tribunal [which] is a necessary element in every case where a hearing is required”. (Friendly, Some Kind of Hearing, 123 U Pa L Rev 1267, 1279.) Here it is claimed that Supervisor Kent spoke in favor of Expressway’s proposal before his election in 1979; the record shows that he did so afterwards as well. However, as to those matters in which he was acting in his official capacity, the record does not reveal any favoritism, fraud or other misconduct. No interest other than a personal preference has been shown or alleged.
The balance to be struck in this situation must reconcile the need for impartiality with the right of elected representatives, who may also perform adjudicative functions, to speak their minds on issues of great public concern in their extra-adjudicatory roles (see City of Fairfield v Superior Ct. of Solano County, 14 Cal 3d 768, 780-781, and cases cited therein). As an elected official who placed himself in the public position of favoring one side of a controversy prior to his election, Kent was merely reiterating the view he had previously taken (City of Farmers Branch v Hawnco, Inc., 435 SW2d 288 [Tex]). The heated statements made by him after what he deemed to be some provocation during a meeting of the town planning board (of which he was not a member), may not present him at that time as a model of judicial decorum. However, on the record before me, there is no evidence to support a finding that he should have *409 disqualified himself, or that he should be disqualified, either nunc pro tunc or hereafter.
The cases cited by petitioners do not require a contrary result. The Connecticut cases cited are inapposite as they were decided under a statute, for which New York has no counterpart, which expressly prohibits participation by any person in zoning or planning decisions in which he has a personal or financial interest (see, e.g., Daly v Town Plan & Zoning Comm, of Town of Fairfield, 150 Conn 495). In the remaining cases disqualification was based either upon some degree of economic conflict (e.g., Fleming v City of Tacoma, 81 Wash 2d 292), or upon allegations of bias by nonelected officials who theoretically had no reason to place their views in the public forum (e.g., Barbara Realty Co. v Zoning Bd. of Review of City of Cranston, 85 RI 152).
Where a full record has been made and preserved, where all interested parties had ample opportunity to challenge the developers’ submissions at every turn, and the court has had an opportunity to review in the most minute detail the board’s action, it cannot be said that a few explosive statements by a town board member amount to a denial of procedural due process (see, generally, Friendly, Some Kind of Hearing, 123 U Pa L Rev 1267). Accordingly, I find that the petitioners have failed to state a cause of action or to raise a triable issue of fact as to this as well. For this reason petitioners’ motion for an examination before trial is similarly denied.
petitioners’ seqra claims
Regarding the SEQRA aspects of this case petitioners charge first that the town board failed to require an adequate discussion of alternatives to the Expressway project, and second that it erred in failing to recirculate the DEIS after receipt of Expressway’s two addenda and the numerous other materials that were added to the DEIS to form the FEIS. Additionally, they assert that the FEIS was substantively deficient and that certain of the board’s findings with regard thereto were without support.
(a) The Discussion of Alternatives in the DEIS
In this regard, the SEQRA regulations are very specific. They require that “[t]he body of all draft and final EIS’s *410 shall at least contain the following * * * a description and evaluation of reasonable alternatives to the action which would achieve the same or similar objectives. (The description and evaluation should be at a level of detail sufficient to permit a comparative assessment of the alternatives discussed. The no-action alternative must also be discussed and evaluated.)” (6 NYCRR 617.14 [f] [5].) The statute under which this regulation was enacted (ECL 8-0109, subd 4) further amplifies this requirement with respect to a DEIS, as follows: “Such statement shall describe the proposed action and reasonable alternatives to the action, and briefly discuss, on the basis of information then available, the remaining items”. The statute also requires a detailed statement of alternatives in the FEIS (ECL 8-0109, subd 2, par [d]).
NEPA and its regulations also emphasize the discussion of alternatives in environmental impact statements (US Code, tit 42, § 4332), and the Federal courts have been vigorous in enforcing the statutory requirements (Concerned About Trident v Rumsfeld, 555 F2d 817; 1-291 Why? Assn, v Burns, 372 F Supp 223, affd 517 F2d lOll; Appalachian Mountain Club v Brinegar, 394 F Supp 105).
There is, however, a crucial distinction to be drawn between NEPA, which governs actions undertaken by or for Federal agencies (US Code, tit 42, § 4332), and SEQRA, which applies not only to government projects but also to the administration of applications made by private parties. This distinction supports a double standard for assessing the adequacy of the discussion of alternatives in an EIS, depending upon the nature of the applicant.
When a governmental agency is an applicant a broader consideration of alternatives is appropriate for several reasons. Government agencies have greater financial resources, engage in projects of larger magnitude to which there are a larger range of feasible alternatives and, given their inherent power of condemnation, have a broader potential range of alternative locations for their projects. In contrast, private developers will usually have a narrower range of feasible alternatives, due both to their more limited resources and, as in this case, to the economic *411 disadvantages of alternative sites which might be available to a developer at a given time.
The SEQRA regulations themselves require only that those reasonable alternatives “which would achieve the same or similar objectives” be discussed (6 NYCRR 617.14 [f] [5]). Here, Expressway’s objective was essentially to obtain approval of its plan for a regional shopping mall, and its only real alternatives (other than inaction) were construction of a different type or size of mall, development of the site for other purposes, or development of an alternative site. These, as well as the “no development” option, were adequately addressed in the DEIS (see City of Rancho Palos Verdes v City Council of City of Rolling Hills Estates, 59 Cal App 3d 869). Moreover, a supplement to this section contained in the FEIS covered these alternatives in even greater detail, and included consideration of the Webster Associates’ site, although neither the site nor its development by Webster Associates was an option available to Expressway to accomplish its goal (see Natural Resources Defense Council v Callaway, 524 F2d 79, 93; Sierra Club v Morton, 510 F2d 813, 825; Trout Unlimited v Morton, 509 F2d 1276, 1286).
Given the fact that what is expected is “[a] thorough consideration of all appropriate methods of accomplishing the aim of the proposed action” (Sierra Club v Morton, supra, p 825), I find that the alternatives section contained in the Expressway DEIS was adequate when considered in light of the fact that the proposed action was a specific type of commercial development proposed by a private developer.
(b) Failure to Recirculate the DEIS after Submission of the Addenda and after Submission of the FEIS
In paragraph 44 of their amended petition, petitioners allege that “the FEIS contains new data and revisions to the project’s preliminary development plans not contained in the DEIS.” The petition goes on to specify 11 areas in which this occurred.
Without extensive reference to the record, it is sufficient for the procedural discussion to note that each area of concern to which petitioners object is treated at some *412 length in the DEIS, as supplemented by the two addenda. While much of the information in the FEIS is new, it is largely responsive to the review process of the DEIS. Thus, to the extent that new information was provided, this was done only as a supplement to the information already contained in the DEIS.
Petitioners cite two NEPA cases in support of their claims that the purported inadequacies in the DEIS require recirculation. In Appalachian Mountain Club v Brinegar (394 F Supp 105, supra) the court enjoined construction of an interstate highway pending recirculation of a supplemented and revised DEIS because traffic data required by Federal Highway Administration regulations was not included in the filed DEIS. In so holding, the court pointed out that under NEPA the draft DEIS is the only stage at which others are given the opportunity to comment; as a consequence, the failure to submit data on an important issue would permit the ultimate decision makers to believe that there is no controversy and would further allow objective errors to go unnoticed {supra, at p 122). Similarly, in Natural Resources Defense Council v Morton (337 F Supp 170), the court refused to vacate a preliminary injunction against sale of oil and gas leases until an alternatives addendum to an EIS, submitted to the court in response to a prior court order, was circulated and filed as required for drafts under NEPA.
Unlike NEPA, which provides for circulation and filing of drafts only, SEQRA provides for circulation, filing and public comment periods for both draft and final impact statements (compare 40 CFR 1503.1 with 6 NYCRR 617.10 [d]-[h]; 617.9 [a]). Thus, the policy considerations underlying the Federal cases cited above do not apply, as the FEIS under SEQRA is not the “in-house” document contemplated by NEPA (see Appalachian Mountain Club v Brinegar, 394 F Supp 105, 111, supra).
Procedurally, the only requirement of SEQRA is a brief discussion in the DEIS of those areas of impact set forth in the statute and the regulations (ECL 8-0109, subd 2; 6 NYCRR 617.14 [f ]). The DEIS merely commences a process calling for extensive public comment (6 NYCRR 617.8) *413 which ends only after the final statement has been filed and circulated (6 NYCRR 617.10 [g]).
Where, as here, the initial DEIS touches on all the required areas of significant impact, contains numerous studies and reports by professional consultants, and entails over 200 pages of detailed analysis, it is beyond doubt sufficient to “inform the public and other public agencies as early as possible about proposed actions that may significantly affect the quality of the environment, and to solicit comments which will assist the agency in the decision making process” (ECL 8-0109, subd 4).
This is not to say that volume alone will determine adequacy. However, in this case, the petitioners have failed to show any area fundamentally related to the purposes of SEQRA which was not sufficiently dealt with in the DEIS. In addition, petitioners have failed to allege or demonstrate that any of the submissions were unavailable for public comment. In fact, the record shows that each new submission was circulated to all parties. Under such circumstances, a remand or stay for recirculation of a document which was both available to and utilized by all of the interested parties would amount to an abuse of what is intended as a salutary process, not as a procedural roadblock. Accordingly, I find no procedural omissions or inadequacies to justify remand for recirculation.
(c) Sufficiency of the Environmental Impact Statement
The petitioners retained their own multidisciplined engineering firm to review the DEIS. As a result of this review, petitioners submitted a 105-page critique of the Expressway DEIS prior to the close of the comment period. The FEIS contains both this critique and specific responses thereto.
Petitioners’ contention is that the responses contained in Expressway’s FEIS are inadequate, and that, as a consequence, the record is insufficient to permit a court to determine whether or not the town board had before* it adequate and complete information upon which it could render a responsible and informed decision.
*414 The function of a FEIS is to identify the environmental issues raised by the proposal, not to resolve them (Environmental Defense Fund v Andrus, 619 F2d 1368,1378; Warm Springs Dam Task Force v Gribble, 565 F2d 549, 554). The test of its sufficiency is whether the EIS was compiled with objective good faith and whether the resulting statement would permit a decision maker to fully consider and balance the environmental factors (Sierra Club v Morton, 510 F2d 813, 819, supra). To the extent that there are disagreements between experts retained by interested parties, ventilation of these differences serves to enlighten, rather than to confuse, the decision-making body. In fact, the inclusion of these differing views in the FEIS is necessary to enable the decision maker to evaluate the proposal in an unbiased fashion.
I have made a careful examination of the DEIS and the FEIS which were before the town board in this case, and, in my opinion, taken together, they were compiled with objective good faith and were more than sufficient to allow the town board to fully consider and balance the environmental factors (Sierra Club v Morton, 510 F2d 813, 819, supra).[2] I have been unable upon a “searching and careful” *415 examination of the documents, to find any area of environmental consequence which has not been adequately aired (see Citizens to Preserve Overton Park v Volpe, 401 US 402, 415-416; cf. Ecology Action v Van Cort, 99 Misc 2d 664, 674).
Accordingly, I find that petitioners’ challenges to the sufficiency of respondents’ DEIS and FEIS are without merit.
(d) Validity of the Agency’s Findings.
The specific findings challenged by petitioners, focus on the conclusion of the town board that there are no reasonable alternatives available to the applicant and that the project complies with the mandates of SEQRA.
Petitioners argue that the only alternatives which the town board actually considered were those of Expressway Associates, and that insufficient consideration was given to petitioners Webster Associates’ proposal. Since the town board was under no obligation to consider the Webster Associates’ project in connection with the Expressway Associates’ application, however, this argument is groundless.
As to petitioners’ attack upon Findings Nos. 110 and 111, it too, is flawed. Given the fact that the Webster Associates’ proposed mall is not among the alternatives which must be considered in reaching a decision on Expressway’s application those findings are gratuitous. In addition, Webster Associates’ prior application is a,matter of public record and was, in fact, before the town board and this court in connection with the Bliek (supra) case. Finally, the over-all environmental impacts of two 90-plus acre shopping malls whose sites are within one-half mile of one another may fairly be said to be “minimally different” without necessitating precise and exact detail.
On the whole, the findings rendered by the town board are fully supported by substantial evidence and support the decision rendered (see Matter of Town of Henrietta v Department of Environmental Conservation of State of *416 N. Y., 76 AD2d 215, 224). It is not the court’s responsibility to “fly-speck” the record in search of minute errors, nor should it substitute its judgment for that of the agency (Sierra Club v Adams, 578 F2d 389, 393). In sum, the record establishes full compliance by the town board with the requirements of SEQRA and this court will not disturb its findings (see Ecology Action v Van Cort, 99 Misc 2d 664, 674, supra).
CONCLUSION
All the issues raised by petitioners in their article 78 proceeding and declaratory judgment action have hereby been resolved as matters of law. Accordingly, the respondents’ motions are granted:
(1) Dismissing the action for declaratory judgment for failure to state a cause of action (CPLR 3211, subd [a], par 7) and for failure to raise a triable issue of fact (CPLR 3212);
(2) Dismissing the article 78 proceeding for failure to raise a triable issue of fact (CPLR 3212);
(3) Eliminating Webster Associates as a party for lack of standing (CPLR 3211, subd [a], par 3); and
(4) Denying respondents’ discovery motions.
I wish to thank all counsel involved for their outstanding preparation and presentation of this case.

. Petitioners urge that the procedures utilized in the rezoning here have judicial rather than legislative characteristics, especially in light of their symbiotic relationship with the SEQRA process. Quoting Professor Booth, they suggest that: “The unique effect of a rezoning decision on the individual applicants and its basis in demonstrable facts peculiar to the particular application make it a decision which is an exercise of judgment primarily judicial in character, not legislative.” (Booth; A Realistic Reexamination of Rezoning Procedure: The Complementary Requirements of Due Process and Judicial Review, 10 Ga L Rev 753, 772.)
While petitioners’ argument may have strong academic merit, this court is unable to accept petitioners’ invitation to deviate from established case law. The relationship of the SEQRA process, or any other process, to the rezoning procedure does not render the latter any the less legislative.

. The specific inadequacies which the petitioners allege, in addition to the alternatives discussion treated earlier, are the following:
(a) Failure to identify and analyze the impacts on flooding and water quality of the rerouting of Shipbuilders Creek. The record shows conclusively that the plans do not call for such rerouting at this time.
(b) Failure to contain a realistic construction schedule. While this is true, it is also true that the DEIS and FEIS state the specific amounts of time which will be required for each phase of construction. Thus, interested parties have the ability to determine when, on the basis of the final approval date, each phase will commence and end.
(c) Failure to respond to comments respecting methodology, reporting and evaluations used in air quality analysis, water quality analysis and noise analysis, as well as failure to perform a meso-scale air quality analysis. As to these, the parties disagree on the testing methods used. However, both sides of the issues are fully ventilated in the text of the FEIS.
(d) Failure to consider impact of decision to realign the ring road around the mall. The record shows that there has been no realignment.
(e) Socio-economic and fiscal impacts. This, too, is thoroughly covered by both sides, from differing points of view.
(f) Overestimation of the assessed value of the mall. This was, concededly, an inadvertent mistake in the DEIS. It was, however, corrected in the FEIS. Further, the FEIS does analyze the potential impact of future changes in the equalization law.
(g) Failure to assemble facts and identify issues such that the town board could realize the policies and goals ofSEQRA. This is a catch-all allegation without support from the record.